583 P.2d 1351

**Jo FLIEGER, Appellant,**

v.

**Harold H. REEB,
Appellee-Cross-Appellant,**

v.

**Jo FLIEGER and Gussie Flieger, hus-
band and wife, Cross-Appellees.**

**No. 2 CA–CIV 2573.**

Court of Appeals of Arizona,
Division 2.

June 8, 1978.

Rehearing Denied July 18, 1978.

Review Denied Sept. 7, 1978.

J. Lavell Harper, Casa Grande, for appellant and cross-appellees.

Ash, Reeb & Addington by Fred J. Ash and Cecil P. Ash, Mesa, for appellee-cross-appellant.

## OPINION

HATHAWAY, Judge.

This appeal arises from an action for damages brought by Harold H. Reeb, appellee, for an alleged assault upon him with a 30–30 rifle by appellant, Jo Flieger. A jury verdict for appellee in the sum of $2,000 compensatory and $20,000 punitive damages, was remitted to $1,000 compensatory and $10,000 punitive damages upon appellant's motion. Appellee's acceptance of the remittitur is deemed revoked by the appeal. 16 A.R.S., Rules of Civil Procedure, Rule 59(i)(2).

Appellant raises evidentiary and instruction questions on appeal and challenges the jury verdict as resulting from passion and prejudice. On cross-appeal, appellee challenges the remittitur and the dismissal of Gussie Flieger, and thus the community of Gussie and Jo Flieger, husband and wife.

This action arose out of an incident which occurred at a corral, known in the vicinity as the OK corral, located on property where the Fliegers were living and which was the subject of a sale by them to Tony Ash, half-brother of appellee Reeb. Hard feelings had developed between the parties and controversy arose concerning the cattle count in connection with the ranch sale. Jo Flieger asked a range detective and his assistant to come and to have Ash come to look at cattle which Flieger was holding in the corral to determine whether or not they had previously been accounted for in the count. Flieger requested that the persons coming to the ranch bring no guns. Nevertheless, allegedly because of previous threats made by Flieger, Ash and Reeb brought pistols. Reeb's pistol was strapped on when he arrived.

Flieger came to the corral unarmed. Seeing that Reeb was armed, he asked him to take his pistol off. The range detective also asked him to disarm, but Reeb declined, explaining that Flieger had previously made threats. Flieger got into his Jeep and drove up the hill to his house. Reeb and Ash opened the corral gate and drove the cattle out into the field toward the range. Ash strapped on his pistol.

While Reeb was away from the corral and moving the cattle, Flieger returned in his Jeep and got out with a .44 pistol strapped on and a 30–30 rifle in his hands. He cocked the rifle, putting a live cartridge into the chamber, put the weapon to his shoulder and aimed it at Reeb about 25 feet

away. Ash pulled his pistol, cocked and aimed it at Flieger and yelled, "If you pull that trigger, you are a dead man." The deputy shouted, "Don't do it, Jo!"

Deputy Kent cautiously walked into the line of fire between Flieger and Reeb. Deputy Scott took Reeb's pistol and holster and Deputy Kent took the rifle from Flieger. Ash gave his pistol to the deputies after Flieger delivered his.

■ Appellant first contends on appeal that the trial court erroneously admitted on rebuttal a taped conversation between appellant and appellee's brother. The taped conversation was admitted for impeachment of appellant's testimony and appellant was forewarned of its existence and potential use through its listing on appellee's pretrial statement as an exhibit. Admission of the tape during appellee's rebuttal testimony instead of during his case in chief was not a clear abuse of the trial court's discretion. Finding no manifest abuse of discretion or prejudice, we will not intercede. *Jansen v. Lichwa*, 13 Ariz.App. 168, 474 P.2d 1020 (1970).

■ Appellant also complains that he was prejudiced by the admission of evidence that was illegally obtained. Reference is made to the testimony of Mr. Chittendon, a private investigator for Reeb, who posed as a newspaper writer and visited with the Fliegers in March and April of 1974, some nine months prior to the filing of this lawsuit. Appellant contends the evidence was obtained by fraud in that Chittendon misrepresented that he was a newspaper man, and was in violation of DR 7–104 of the Code of Professional Responsibility. Rule 29(a), Rules of the Supreme Court.

"DR 7–104. Communicating with One of Adverse Interest

(A) During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

This disciplinary rule is inapplicable because the Fliegers were not parties to this action until January 27, 1975, when the complaint was filed. The record does not indicate that appellee or his counsel had knowledge that the Fliegers were represented by counsel at the time. Appellant has cited no authority condemning the use of a private investigator in the manner Chittendon was employed.

■ Both parties challenge the judgment on appeal for reasons we later discuss. At the outset, we note that the remittitur was granted for the following reasons:

"The Court is of the opinion that the damages awarded were the result of passion and prejudice; that the plaintiff to some extent provoked the incident and that the Court may have committed error in the giving of a repetitious instruction . . . ."

If the record discloses that the jury verdict was the result of passion and prejudice, as the trial court determined, a new trial should have been granted, *Stallcup v. Rathbun*, 76 Ariz. 63, 258 P.2d 821 (1953), and a remittitur should not have been allowed. *Miller v. Condon*, 66 Ariz. 34, 182 P.2d 105 (1947); *Perazzo v. Ortega*, 32 Ariz. 154, 256 P. 503 (1927); *Perazzo v. Ortega*, 29 Ariz. 334, 241 P. 518 (1925). If, however, the case was properly submitted to the jury, the verdict will not be deemed the result of passion and prejudice if within the range of credible evidence. *Hardy v. Southern Pacific Employees Association, Inc.*, 10 Ariz. App. 464, 459 P.2d 743 (1969).

The trial court inadvertently read a second punitive damages instruction submitted by appellee. No complaint is made that the instruction is an inaccurate statement of the law, rather appellant complains that reading both instructions over-emphasized punitive damages. Upon appellant's motion to remit the judgment to $500 compensatory and $2,000 punitive damages or grant a new trial, the trial court remitted the judgment to $1,000 compensatory damages and $10,000 punitive damages and granted appellant 20 days to accept the

order of remittitur or a new trial with respect to damages only would be granted. Appellee accepted the remittitur, but this appeal and cross-appeal followed.

The first instruction on punitive damages was:

"You are further instructed that, in addition to any actual or compensatory damages, if you find that there were any, you may award exemplary damages to the plaintiff or the counter-defendant, if you find that the wrongful acts, if any, causing such actual damages were committed in a wanton, wilful, or reckless manner, or in case you find such acts were committed wantonly, recklessly, and without due regard to the rights of the parties, or if you find that wrongful acts of the parties, or either one of them, causing such damages were from any bad motive or so recklessly done so as to imply a disregard for the obligations and rights of plaintiff."

The second instruction was:

"Punitive damages are, as you will readily understand from the wrong itself, those which punish, punish one for his unlawful act, and are not only intended to punish the wrongdoer, but intended to deter him and others from doing a like thing. It is your province if you determine that the plaintiff is entitled to recover, to determine the amount of money which would compensate him in the element of compensation which I have detailed to you. If, then, you further find that the defendant or the plaintiff in this action acted wilfully, wantonly, and maliciously, the party may be awarded a sum as punitive damages, such damages as in your opinion would punish either one of the parties for his unlawful act, and would deter him and others in like circumstances from committing that act."

■ Both parties sought punitive damages. Upon instructing the jury, the trial court advised counsel in a bench discussion that he had inadvertently read both instructions. He asked if there were any additions or corrections to the instructions and received none. Defense counsel's silence indicates apparent approval, and amounts to a waiver of any error which the trial court might have committed.

■ Moreover, we find nothing that would indicate the jury was misled or confused by the instructions. The two instructions are compatible. The first indicates the type of conduct for which punitive damages may be awarded. The second explains the purpose of punitive damages. Although there were two instructions covering the same subject matter, this is not error in and of itself. *Reah v. Jupin*, 68 Ariz. 335, 206 P.2d 558 (1949). The instructions do not appear to express the judge's personal view to the jury as condemned in *Bean v. Gorby*, 80 Ariz. 25, 292 P.2d 199 (1956).

Appellant contends that the jury verdict was the result of passion and prejudice, and that the award of $20,000 punitive damages, even in light of the instruction of the court that provocation by the appellee can be used to mitigate punitive damages, was clearly outrageous. Appellee takes issue and argues that the verdict should have been left intact. Appellant maintains that the award was ". . . at the very least, extraordinarily excessive." Appellant's argument as to the excessiveness of the verdict appears to be premised upon the absence of evidence that the appellee sustained physical damage and that perhaps he was guilty of provoking the incident since there was testimony that his hand was on the butt of his pistol before the alleged assault. This evidence, however, would indicate that if, indeed, his hand were on the butt of his pistol, his coat came down over the weapon so his hand was actually not in contact with the pistol. Any evidence of provocation appears equivocal and apparently the jury did not give much weight to it.

In any event, the nature of the assault was such as to expose the appellee to a life-threatening crisis, and the record shows no justification therefor. Appellee testified that the experience was frightening and that he had often thought about it since. He described his feelings at the time of the assault:

"I felt that if I moved in the slightest, why, he [appellant] would shoot me.

\*     \*     \*     \*     \*     \*

Well, I was certain that he was going to pull the trigger, and I can recall having— three thoughts came to my mind that I recall, and one was 'I wonder what'—'I wonder what Janice [appellee's wife] and the kids will do.'. And then I thought, 'Maybe he will shoot me in the stomach,' because in looking at the gun it appeared to me it was either at my face or at the chest, and I thought, 'Maybe he will shoot me in the stomach.' And I could still hear Tony hollering. And it's always kind of been a family joke that Tony is a terrible shot, and I just thought, 'What if he tries to shoot Jo? I know for sure then I will be killed.'"

■ For damages to be found excessive they must " ' ". . . strike mankind, at first blush, as being beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line, for they have no standard by which to ascertain the excess." ' " *Young Candy & Tobacco Company v. Montoya*, 91 Ariz. 363, 370, 372 P.2d 703, 707 (1962); *Miller v. Condon*, 66 Ariz. 34, 182 P.2d 105 (1947). We do not find the sum of $2,000 compensatory damages for the subjection of appellee to this assault by appellant shocking.

■ Concerning the sum of $20,000 punitive damages assessed by the jury, we are mindful that such damages are designed to punish. The record would indicate that the appellant's net worth was over ½ million dollars. In assessing $20,000 exemplary damages, the jury wanted to deter this type of conduct—cocking a live cartridge into the chamber of a 30–30 rifle and aiming it at another person approximately 25 feet away in a threatening fashion. The assessment of damages in the instant case is not susceptible to a cut-and-dried computation and lies peculiarly within the jury's province. *Creamer v. Troiano*, 108 Ariz. 573, 503

P.2d 794 (1972). We do not find the amount of exemplary damages shocking and conclude that the remittitur should not have been granted. See *Hardy v. Southern Pacific Employees Association, Inc.*, supra.

One question raised on the cross-appeal remains. Was dismissal of the suit as to Gussie Flieger an error of law? In moving to dismiss, cross-appellees argued that, "There has been no evidence of any kind to connect her with anything in this case. There is nothing showing that he was doing it on behalf of the community. The only testimony was that he went down there to get the gun from Mr. Reeb. Gussie did not aid and abet or encourage him. . . ."

■ Cross-appellant's position is that the assault was committed in the pursuance of community business, pointing out that the only reason the parties were together was to determine ownership of cows in the corral. Cattle had been purchased from cross-appellees and controversy existed as to whether the animals in the corral had been paid for. Jo Flieger had penned the animals and had notified Ash, the purchaser, to come inspect them. It appears undisputed in the record that the cattle had been the community property of cross-appellees Jo and Gussie Flieger. At the time of the assault, Reeb had turned the cows out of the corral and was driving them off. One purpose of the assault would seem to be an effort on the part of Jo Flieger to stop Reeb from running the cows off. We find sufficient evidence from which the jury could infer that the assault arose in pursuance of community affairs, as contended by cross-appellant, and conclude that the trial court erred in dismissing as to Gussie Flieger.

The court is directed to reinstate the jury verdict in favor of appellee and against Jo Flieger and to enter judgment thereon. The order dismissing Gussie Flieger is reversed and the cause is remanded for retrial on the sole issue of whether Jo Flieger acted for and on behalf of the community.

Reversed and remanded.

RICHMOND, C. J., and HOWARD, J., concur.