885 P.2d 1096

Jerry WILLIAMS and Shirley Williams, as guardians for and on behalf of Lori Jo DIXON; and as the natural parents of Lori Jo Dixon, Plaintiffs–Appellants,

v.

John THUDE and Jane Doe Thude, husband and wife; Manuel Morales–Vasquez and Jane Doe Morales–Vasquez, husband and wife, Defendants–Appellees.

No. 1 CA–CV 90–0412.

Court of Appeals of Arizona,
Division 1, Department A.

April 21, 1994.

As Corrected April 26, and May 12, 1994.

Review and Cross–Petition for Review Granted on Issue 2, Denied on all other Issues Dec. 22, 1994.

Crowe & Scott, P.A. by Michael B. Scott, Phoenix, for plaintiffs-appellants.

Jennings, Strouss & Salmon by William T. Birmingham, M. Byron Lewis and Michael J. O'Connor, Phoenix, for defendants-appellees.

## OPINION

CLABORNE, Judge.

This action arose from a motor vehicle accident in which Lori Jo Dixon ("Lori") drove into the rear end of a cotton plow being pulled by a farm tractor. This is a consolidated appeal from an order by the trial court denying a motion for a new trial and a second appeal from an order granting the motion for new trial upon reconsideration. Six issues are raised on appeal:

1. Whether the trial court erred in failing to instruct the jury regarding negligent supervision;

2. Whether the trial court erred in bifurcating the trial on the issues of damages and liability;

3. Whether the trial court erred in instructing the jury regarding lighting requirements on the back of a motor vehicle;

4. Whether the trial court erred in refusing to instruct the jury regarding safety requirements for projecting loads;

5. Whether the trial court erred in admitting the blood alcohol content of Lori; and

6. Whether the trial court erred in instructing the jury regarding willful and wanton conduct.

We find that the trial court erred in instructing the jury. We affirm the order granting the motion for new trial.

## I. Facts

In an evening in January 1988, Lori and some of her friends went to a nightclub in Tempe. At the end of the evening, Lori drove her friend Roxanne home. Roxanne loaned Lori some money so that Lori could get something to eat on the way home. Sometime between 1:30 a.m. and 2 a.m. Lori drove into the back of a cotton plow being pulled by a tractor. What Lori did after borrowing the money from Roxanne until the time of the accident is unknown.

Police officer Kenneth Underwood arrived at the scene of the accident at 2:10 a.m. Upon investigating the scene, he noticed an opened beer can in the driver's side of Lori's car. He subsequently ordered a blood alcohol sample which indicated that Lori's blood alcohol content ("BAC") at 3:15 a.m. was 0.119%. There were no skid marks indicating that Lori had taken any evasive action to avoid the accident. The farm tractor pulling the cotton plow had its back white cargo lights illuminated on the plow as it was traveling on the highway. There were no other lights or warning signs to indicate that the tractor was pulling the plow.

As a result of the accident, Lori suffered severe injuries and is unable to recollect the events of that night.

## II. Procedure

Appellants Jerry and Shirley Williams ("Plaintiffs") filed a complaint alleging negligent operation, negligent hiring, supervision and training, and violation of the laws and regulations pertaining to the operation of farm equipment on public roads.

The trial was bifurcated on the issues of damages and liability. The case proceeded to a trial by jury. The jury heard extensive testimony regarding Lori's BAC and its relation back to the time of the accident. The jury was instructed regarding Lori's BAC and whether her conduct amounted to willful and wanton negligence proximately causing her injuries. In addition, the jury was instructed regarding lighting requirements on the rear of tractors but not as to the plow. At the close of the evidence, a directed verdict was entered dismissing some of the parties. The case went to the jury with Appellee Paradise Cattle Company ("Defendant") as the only defendant. The jury returned a defense verdict.

Following the verdict, Plaintiffs moved for a new trial. The motion was denied and Plaintiffs then moved for reconsideration. The trial court denied the motion. Plaintiffs appealed to this Court. Because of a decision issued by this Court bearing upon Plaintiff's case, we stayed the appeal and ordered the trial court to reconsider Plaintiffs' motion for a new trial. The trial court granted the motion for new trial and requested that this Court advise whether its instruction regarding the lack of a triangle or red light on the back of the plow was in error. Defendant appealed. We consolidated the two appeals.

## III. Discussion

### 1. Failure to Instruct Jury on Negligent Supervision

Plaintiffs contend that the trial court erred in failing to instruct the jury regarding negligent supervision. Defendant responds that the issue has been waived on appeal. In order to properly preserve an objection to jury instructions on appeal, counsel must state distinctly what is being objected to and the grounds for the objection. *See Rodriguez v. Schlittenhart,* 161 Ariz. 609, 616, 780 P.2d 442, 449 (App.1989); *Flieger v. Reeb,* 120 Ariz. 31, 34, 583 P.2d 1351, 1354 (App.1978).

Here, the trial court asked both counsel if there were any corrections that needed to be made to the jury instructions. Defendant's counsel responded "nothing," and Plaintiffs' counsel responded "[none] that I am aware of." After the verdict, the trial court realized that he had inadvertently left out two of Plaintiffs' requested instructions regarding negligent supervision. Plaintiffs argue that the comment "[none] that I am aware of,"

preserves the issue on appeal. We disagree. We held in *Flieger* that counsel's silence when asked if there were any additions or corrections to instructions amounted to waiver of any error on appeal. *Flieger* at 34, 583 P.2d at 1354. The same principle applies here. The fact that counsel for Plaintiffs failed to specifically object to the omission of the instruction amounts to waiver.

### 2. Motion to Bifurcate Trial

■■■ Plaintiffs next contend that the trial court erred in granting Defendant's motion to bifurcate the trial on the issues of liability and damages. Arizona Rule of Civil Procedure 42(b) (1987) ("Rule 42(b)") provides:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counter-claim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury.

The trial court is given broad discretion in exercising its severance power under Rule 42(b). *Morley v. Superior Court of Arizona,* 131 Ariz. 85, 87, 638 P.2d 1331, 1333 (1981); *Woods v. Harker,* 22 Ariz.App. 83, 86, 523 P.2d 1320, 1323 (1974). We find that the trial court did not abuse its discretion.

Rule 42(b) allows the trial court to bifurcate the trial, separating the issues of liability and damages, where the issues are separate and distinct from one another. *Woods* at 86, 523 P.2d at 1323. The record before us supports a finding that the evidence relevant to the issues of damages and liability was unrelated. Specifically, the trial court found:

> In this case, Plaintiff has allegedly sustained catastrophic injuries....
>
> This Court finds that Plaintiff's injuries and the results of those injuries holds a definite potential to adversely and improperly affect the jury's fair, impartial, and objective consideration of the liability issues. Additionally, the Court finds that bifurcation is proper inasmuch as it ap-

pears the issues of liability is [sic] separate and distinct from damages. Although it is stated that Plaintiff will be testifying on the liability aspect of Plaintiff's claim, the Court observes that Lori has no recall of the events of the accident nor of her activities prior to the accident. The liability issues are whether the Defendants' lack of fluorescent lighting was a proximate cause of the accident and whether Plaintiff was contributorily negligent in her speeding and/or intoxication. On the other hand, the issue of damages relates to the nature and extent of Plaintiff's brain injury, and the nature and extent of the treatment needed in the future.

These findings were within the trial court's discretion, and the severance order "served the purposes of Rule 42 by achieving judicial economy and avoiding prejudice." *Mulhern v. City of Scottsdale,* 165 Ariz. 395, 398, 799 P.2d 15, 18 (App.1990). Therefore, we find that the issues were properly bifurcated.

### 3. Lighting Requirements

■■■ Plaintiffs also argue on appeal that the trial court erred in refusing to give its requested jury instruction regarding lighting requirements on the back of motor vehicles pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 28–931(C) (1989). Plaintiffs included in their requested instruction specific language that bright white cargo lights shining from the rear of the tractor was in violation of Arizona law. The relevant statute provides:

> All lighting devices and reflectors mounted on the rear of any vehicle shall display or reflect a red color, except the stop light or other signal device, which may be red, amber or yellow, and except that the light illuminating the license plate or the light emitted by a back-up lamp shall be white.

A.R.S. § 28–931(C).

■■■ In determining whether the trial court erred in not giving the requested instruction, we look to see if the instruction was adequately covered by another instruction. *Lewis v. N.J. Riebe Enter., Inc.,* 170

Ariz. 384, 397, 825 P.2d 5, 18 (1992). The following instruction was given by the court:

> The law requires that:
>
> A motor vehicle, trailer . . . any other vehicle which is being pulled at the end of a train of vehicles, shall be equipped with at least one tail light mounted on the rear, which, when lighted as required by this article, shall emit a red light plainly visible from a distance of 500 feet to the rear. The law requires that every vehicle upon a highway within this state at any time from sunset to sunrise shall display lighted lamps and illuminating devices clearly visible to a distance of 500 feet at the rear. All lighting devices and reflectors mounted on the rear of any vehicle or train of vehicles is required to display or reflect a red color which is visible to a motor vehicle approaching from the rear.
>
> You are instructed that the requirements for the lighting equipment which have been given to you apply to the farm equipment involved in this accident.

The given instruction clearly instructed the jury on the applicable law and adequately covered Plaintiffs' requested instruction. Therefore, we find no error in refusing to give the requested instruction. *See id.* at 397–98, 825 P.2d at 18–19.

### 4. Safety Requirements for Vehicles with Projecting Loads

■ A central issue to Plaintiffs' case was that the tractor and plow were not equipped with the proper safety instruments required by statute. Plaintiffs claim that the trial court erred in refusing to give a requested jury instruction regarding the lack of a red tail light on the rear of the plow. Whether the trial court should have so instructed the jury depends on the classification of the plow. Plaintiffs claim that the plow was a projecting load and subject to the safety requirements in A.R.S. section 28–921 et seq. (1989). We disagree because we believe the plow is an implement of husbandry exempt from specific equipment requirements on motor vehicles.

The plow is pulled by a farm tractor while in use and while being transported from one cotton field to another. A.R.S. section 28–101(23) (Supp.1993) defines a farm tractor as a "motor vehicle designed and used primarily as a farm implement for drawing implements of husbandry." Section 28–101(27) (Supp. 1993) defines "implements of husbandry" as:

> vehicles designed primarily for agricultural purposes and used exclusively in the conduct of agricultural operations. Any implement or vehicle, whether self-propelled or otherwise, which is used exclusively for carrying products of farming from one part of a farm to another part of the same farm, or from one farm to another farm, which is used solely for agricultural purposes including the preparation or harvesting of cotton, alfalfa, grains and other farm crops, and which is only incidentally operated or moved on a highway whether as a trailer or self-propelled unit is an implement of husbandry exempt from registration as a motor vehicle.

The cotton plow clearly fits within the definitional requirements of implements of husbandry. It is designed primarily for agricultural purposes, used exclusively in the conduct of agricultural operations, and is only incidentally moved on a highway. As an implement of husbandry, the cotton plow is exempt from the equipment requirements set out in A.R.S. section 28–921 et seq. *See* A.R.S. § 28–921(C) (1989) ("The provisions of this article with respect to equipment on vehicles shall not apply to implements of husbandry. . . ."). Thus, the trial court did not err in refusing to give Plaintiff's requested jury instruction regarding the requirement of red tail lights on the rear of projecting loads.

### 5. Evidence Regarding Lori's BAC

■ Defendant argues that the issue of whether the trial court erred in admitting Lori's BAC is not properly before us because it was not raised in Plaintiffs' motion for new trial, and the scope of the appeal is limited to those issues raised in that motion. It should be remembered that Plaintiffs filed two notices of appeal. Although the first notice of appeal was from the trial court's denial of the motion for a new trial, the second notice of appeal was from the underlying judgment

and the denial of the motion for a new trial. We set out in *Rourk v. State*, 170 Ariz. 6, 12, 821 P.2d 273, 279 (App.1991), that where the appeal is from the underlying judgment and the order denying the motion for new trial, the appeal is not limited to issues raised in the motion for new trial. Thus, the issue regarding Lori's BAC is properly before the Court.

■ At trial, Defendant called James Bourland, a criminologist for the Department of Public Safety ("DPS") who examined Lori's blood sample to testify. Bourland testified that Lori's BAC was 0.11% at 3:15 a.m. Over Plaintiffs' objection, Bourland also testified as to a range of Lori's BAC between 1:30 a.m. and 2:00 a.m. Because the time of the accident was unknown and factors such as when Lori last ate or had her last drink where unknown, Bourland could only testify as to a range of Lori's BAC. After considering the possible factors, Bourland estimated Lori's BAC to be between 0.08% and 0.14%.

Plaintiffs argue that the trial court improperly admitted evidence of Lori's BAC without any relation back testimony. Specifically, Plaintiffs argue that it was improper for the trial court to admit this evidence since it was for purposes of receiving the statutory presumption of intoxication under A.R.S. section 28–692(E)(3) (1989).[1] *See Desmond v. Superior Court*, 161 Ariz. 522, 529, 779 P.2d 1261, 1268 (1989); *State ex rel. Romley v. Brown*, 168 Ariz. 481, 483, 815 P.2d 408, 410 (App. 1991). We agree.

■ The standard at the time of the trial for admitting BAC was governed by *Desmond*.[2] The court held in *Desmond* that "the results of an intoxilyzer test taken within a reasonable time after arrest are relevant and may be admitted into evidence without a foundation relating the BAC back to the time of the arrest." *Desmond*, 161 Ariz. at 527, 779 P.2d at 1266. However, when a party offers the BAC result into evidence without

any relation back testimony, the court should admit only that portion of the result that indicates the presence of alcohol with an instruction pursuant to Arizona Rule of Evidence 105 (1988). The instruction should state that "the evidence is admitted for the limited purpose of showing that, at the time of the test, defendant had alcohol in his blood and that such evidence without more may not be used for the purpose of showing defendant was under the influence or the amount as a percentage of blood alcohol at any specific time." *Id.* at 528, 779 P.2d at 1267.

■ Generally, this principle is only germane to criminal DUI prosecutions. *Brown*, 168 Ariz. at 483, 815 P.2d at 410. The legislature has given different foundational requirements for civil and criminal admissions of breath test results. *See Werner v. Prins*, 168 Ariz. 271, 274, 812 P.2d 1089, 1092 (App. 1991). However, where the purpose of admitting the breath test results is to receive a statutory presumption instruction pursuant to A.R.S. section 28–692(E)(3) or to make a prima facie showing of driving under the influence with a BAC of 0.10% or more, then the principles of *Desmond* apply, whether it be in a civil or criminal proceeding. *See generally Werner* at 271, 812 P.2d at 1092; *Brown*, 168 Ariz. at 483, 815 P.2d at 410.

■ Here, although Bourland qualified as an expert, he failed to testify as to evidence upon which to relate Lori's BAC back to the time of the accident. There was nothing to show the last time Lori had something to eat or drink, and further, it was unknown at what time the accident occurred. Without these facts, it was impossible for Bourland to determine whether Lori's BAC was in the absorbing or eliminating phase. Thus, there could be no presumption that Lori was driving under the influence of intoxicating liquor at the time of the accident. *See Desmond*, 161 Ariz. at 529, 779 P.2d at 1268; *see also*

---

1. A.R.S. section 28–692(E)(3) provided at that time: "If there was at that time 0.10 or more alcohol concentration in the defendant's blood or breath, it may be presumed that the defendant was under the influence of intoxicating liquor.".

2. The legislature has amended A.R.S. section 28–692(A)(2) to read "0.10 or more within two hours

of driving or being in actual physical control of the vehicle" so that the burden of producing relation back testimony now lies with the defendant and the principles of *Desmond* are no longer applicable. *See* Laws 1990, Ch. 375, § 8; A.R.S. § 28–692(A)(2) and (B) (Supp.1993).

*State ex rel. McDougall v. Riddel,* 169 Ariz. 117, 119, 817 P.2d 62, 64 (App.1991) (relation back evidence is necessary for the state to receive the statutory presumption of intoxication); *State v. Mendoza,* 170 Ariz. 196, 199, 823 P.2d 63, 66 (App.1990) *approved in part, vacated in part on other grounds,* 170 Ariz. 184, 823 P.2d 51 (1992) (although the presumption may not be unreasonable, it cannot be the basis of a jury instruction without evidence relating the blood alcohol back to the time of the arrest). We find that it was error for the trial court to give the statutory presumption instruction. However, if a party foregoes the requested instruction on the statutory presumption of intoxication, relation back evidence is unnecessary. *McDougall,* 169 Ariz. at 119, 817 P.2d at 64.

### 6. *Willful and Wanton Conduct*

█ The last issue raised by Plaintiffs is that the trial court improperly instructed the jury regarding willful and wanton behavior on the part of Lori. Defendant argues that the instruction was not in error and we should overrule *Bauer v. Crotty,* 167 Ariz. 159, 805 P.2d 392 (App.1991). We find that the instruction was in error and explain the analysis set forth in *Bauer v. Crotty.*

The following two instructions regarding willful and wanton behavior were given by the trial court over Plaintiffs' objection.

Gross, willful, or wanton conduct is action or inaction with reckless indifference to the result or the rights or safety of others. A person is recklessly indifferent if he or she knows, or a reasonable person in his or her position ought to know: (1) that his action or inaction creates an unreasonable risk of harm; and (2) the risk is so great that it is highly probable that harm will result.

If you find that Lori Dixon was under the influence of alcohol when the collision occurred, then you must determine whether her conduct amounted to gross, willful, or wanton conduct.

and,

If you find that Lori Dixon willfully or wantonly contributed to causing the accident and that the defendant was at fault but did not willfully or wantonly contribute to causing Lori Dixon's injury, then Lori

Dixon has no right to either full or reduced damages and your verdict should be for the defendant.

*Bauer* held that such an instruction was deficient and erroneous because it violated Article 18, section 5 of the Arizona Constitution. *Bauer* at 168, 805 P.2d at 401. Article 18, section 5 provides that:

The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury.

█ Contributory negligence is always a question of fact for the jury and cannot bar a plaintiff's claim as a matter of law. *Del E. Webb Corp. v. Superior Court,* 151 Ariz. 164, 169, 726 P.2d 580, 585 (1986). Article 18, section 5 "prescribes the procedure that must be followed if contributory negligence is asserted as a defense". *Hall v. A.N.R. Freight Sys., Inc.,* 149 Ariz. 130, 134, 717 P.2d 434, 438 (1986). "[I]t does not extend 'independent vitality' to any form of that defense." Noel Fidel, *Preeminently a Political Institution: The Right of Arizona Juries To Nullify the Law of contributory Negligence,* 23 Ariz.St.L.J. 1, 45 (1991), citing *Hall.* Thus, it defines a procedural right and not a substantive right.

Under the common law, as modified by Arizona Constitution Article 18, section 5, the defense of contributory negligence operated as an absolute bar to a plaintiff's recovery *if the jury chose to apply it. See Hall,* 149 Ariz. at 136, 717 P.2d at 440 (emphasis added). Then in 1984 the Legislature adopted the Uniform Contribution Tortfeasors Act. A.R.S. § 12–2501 *et seq.* Section 12–2505(A) (1982) sought to eliminate the all-or-nothing effect of the defense of contributory negligence under the common law. It provides:

The defense of contributory negligence or assumption of risk is in all cases a question of fact and shall at all times be left to the jury. If the jury applies either defense, the claimant's action is not barred, but the full damages shall be reduced in proportion to the relative degree of the claimant's fault which is a proximate cause of the injury or death, if any. *There is no right to comparative negligence in favor of any*

*claimant who has intentionally, willfully or wantonly caused or contributed to the injury or wrongful death.*[3]

*Hall* held that this statutory change in common law was valid under Arizona Constitution Article 18, section 5. However, the trial court could not instruct the jury to give a particular effect to the finding of contributory negligence. *Gunnerson v. Gunnerson,* 163 Ariz. 475, 476, 788 P.2d 1226, 1227 (App. 1989). More specifically, the *Gunnerson* court held that the trial court could not require the jury to apply the law of comparative reduction if it found contributory negligence to exist. *Id.* It is now well settled "that a jury, finding contributory negligence to exist, has the constitutional discretion to withhold comparative reduction of plaintiff's damages and to award plaintiff full recovery." *Id.* at 47.

These cases, however, leave open the question of a jury's discretion when there exists evidence that the plaintiff's willful and wanton behavior contributed to plaintiff's injuries. A problem arises because A.R.S. section 12–2505(A) precludes comparative negligence awards in favor of plaintiff's acting willfully and wantonly. *Bauer,* 167 Ariz. at 168, 805 P.2d at 401. Is it the case then that where a plaintiff's conduct is willful and wanton, we are left with the historical all or nothing principles?

*Bauer* held in response to this question that the proper instruction should be two-fold in nature. First, the instruction should inform the jury that it must decide whether the plaintiff was contributorily negligent, and if so, the percentage amount his contributory negligence should reduce his recovery. Second, the instruction must also inform the jury that if it finds the plaintiff guilty of willful and wanton contributory negligence, the plaintiff cannot recover reduced damages under comparative negligence principles, and the jury must choose either to award the plaintiff his full damages or to render a verdict for the defendant. *Bauer* at 168, 805

P.2d at 401. This is where we part from *Bauer.* We believe that not only should you instruct the jury that they should not apply the principles of comparative negligence, but also that they *may* find however they see fit.

*Gunnerson* told us it is the jury's "right . . . to apply or not, as the jury sees fit, the law of contributory negligence as a defense." *See Heimke v. Munoz,* 106 Ariz. 26, 28, 470 P.2d 107, 109 (1970). "It is one thing to tell the jury that the consequential law is fit for the generality of cases, but may be adapted to accomplish justice in the case at hand. It is another to suppress the consequential law and tell the jury it may do whatever it sees fit." *Fidel* at 55. We wish to finish the business in the area of instructions to the jury so that the trial court can "understandably communicate the responsibility that [the jury's] nullification power entails." *Id.* at 56. We believe that it is important to instruct the jury on the applicable law and its consequences, and then instruct them that they may choose either to apply it or not.[4]

Because A.R.S. section 12–2505(A) does not extend comparative negligence principles to a willful and wanton plaintiff, then it must be that the all or nothing principles of contributory negligence still apply to the willful and wanton plaintiff who contributes to his or her own injuries. It follows that the proper instruction to the jury would include an instruction similar to the ones given prior to the enactment of the Uniform Tortfeasors Act. Such an instruction stated:

> If you find that Plaintiff was negligent and that such negligence was the proximate cause of Plaintiff's injuries, *then you may find for the Defendant or for the Plaintiff as you may see fit.*

*See Winchester v. Palko,* 18 Ariz.App. 534, 537, 504 P.2d 65, 68 (1972); and *Manhattan–Dickman Constr. Co. v. Shawler,* 113 Ariz. 549, 555, 558 P.2d 894, 900 (1976). Thus, the proper instruction regarding a willful and wanton plaintiff would include first a compar-

---

**3.** A.R.S. section 12–2505(A) has been amended subject to a 1994 general election ballot referendum. *See* A.R.S. 12–2505(A) (Supp.1993). The amendment does not affect our analysis here.

**4.** *See Heimke* 106 Ariz. at 30, 470 P.2d at 111 ("While the jury should be instructed as to the law of contributory negligence, so that it may apply the defense if it sees fit, the court cannot peremptorily require the jury to follow such instructions in arriving at a verdict in the case.").

ative negligence instruction and then an instruction stating:

> Gross, willful, or wanton conduct is action or inaction with reckless indifference to the result or the rights or safety of others. A person is recklessly indifferent if he or she knows, or a reasonable person in his or her position ought to know: (1) that his action or inaction creates an unreasonable risk of harm; and (2) the risk is so great that it is highly probable that harm will result.

> If you find that Plaintiff willfully or wantonly caused Plaintiff's injury, and that Defendant was at fault (but not willfully or wantonly), then you should not determine relative degrees of fault, however you may find for the Defendant or for the Plaintiff as you see fit.

This instruction more clearly notifies the jury of the applicable law, the jury's function, and the jury's power concerning the willful and wanton plaintiff.

■ Before leaving this issue, Defendant raises on appeal that Plaintiffs did not timely object to the jury instruction given pursuant to Arizona Rules of Civil Procedure 51(a) (Supp.1993), and thus waived the assignment of error on appeal. Whether this sufficiently complied with Rule 51(a) is irrelevant because we believe the error was fundamental. *See Salt River Project v. Westinghouse Elec.*, 176 Ariz. 383, 387, 861 P.2d 668, 672 (App. 1993).

> Fundamental error is that which goes to the very foundation of a case, *State Consolidated Publishing Co. v. Hill*, 39 Ariz. 163, 4 P.2d 668 (1931), or takes an essential right from a party, *Johnson v. Elliott*, 112 Ariz. 57, 537 P.2d 927 (1975), or, as discussed above, deprives a party of a fair trial, *Maxwell v. Aetna Life Insurance Co.*, 143 Ariz. 205, 693 P.2d 348 (App.1984), or deprives a party of a constitutional right. Fundamental error is not waived even in the absence of an objection ... (citations omitted), and must be considered *sua sponte* even when not raised on appeal. (Citations omitted).

*Id.* Thus, there was no waiver in this case since it was fundamental error.

### IV. Conclusion

For the reasons set forth above, we find that the trial court erred in instructing the jury. We accordingly affirm the order granting the motion for new trial.

WEISBERG, P.J., and GARBARINO, J., concur.