NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LISA FAULKNER, *Plaintiff/Appellant*,

*v.*

LABORATORY CORPORATION OF AMERICA, *et al.*,
*Defendants/Appellees*.

No. 1 CA-CV 17-0787
FILED 10-11-2018

Appeal from the Superior Court in Maricopa County
No. CV2015-004144
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

COUNSEL

SL Chapman LLC, Scottsdale
By Bradley Matthew Lakin, Robert W. Schmieder, II
*Counsel for Plaintiff/Appellant*

Jones Skelton & Hochuli PLC, Phoenix
By Phillip H. Stanfield, Jonathan Paul Barnes, Jr.
*Counsel for Defendants/Appellees*

<hr />

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kenton D. Jones and Judge David D. Weinzweig joined.

<hr />

**S W A N N**, Judge:

**¶1**         This is a personal injury case arising from an automobile accident.  Plaintiff Lisa Faulkner appeals the superior court's rulings precluding expert testimony and evidence, denying her motion for a new trial on damages, and awarding sanctions against her under Ariz. R. Civ. P. ("Rule") 68.  We conclude that Faulkner's disclosure violations justified the preclusion rulings, the jury's verdict was consistent with credible evidence, and the court properly applied Rule 68 as that rule is currently written.  We therefore affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**         In 2013, Lance Estervig, while driving a vehicle owned by his employer Laboratory Corporation of America ("LCA"), collided with a vehicle driven by Faulkner, in which her minor daughter was a passenger.  Faulkner and her daughter, who is not a party to this appeal, brought a personal-injury negligence action against Estervig and LCA.

**¶3**         The defendants stipulated that Estervig had negligently caused the collision, and that LCA was vicariously liable for Estervig's negligence.  The defendants denied, however, that the collision caused the plaintiffs' alleged injuries.

**¶4**         The defendants made a pretrial offer of judgment under Rule 68(g) to resolve Faulkner's claims for $35,000 and her daughter's claims for $15,000, conditioned on both offerees accepting the respective offers.  The plaintiffs did not accept the offer.

**¶5**         Faulkner timely disclosed Dr. Amit Patel as both a fact and expert witness and, after the expert disclosure deadline, sought treatment from and disclosed Dr. Igor Yusupov as an additional fact and expert witness. Faulkner later clarified that she wished to introduce Dr. Yusupov's medical records but did not plan to call him as a witness.  The defendants moved to preclude Dr. Patel from offering expert opinions based on Faulkner's failure to disclose the substance of his anticipated testimony,

and they moved to exclude Dr. Yusupov's expert opinion on timeliness grounds.

**¶6** The court excluded Dr. Patel's calculation of costs for future medical care, and precluded Faulkner from eliciting the doctor's opinions on causation "without first providing related medical records to the Court sufficiently in advance of the witness testifying for the Court to make a ruling." The court ultimately excluded Dr. Patel's causation testimony after considering records that Faulkner provided on the third day of trial. The court held that the records did not articulate causation "because all [Dr. Patel] indicates is that she has a history of a motor vehicle accident, and that she has pain post motor vehicle collision. It doesn't indicate that he did anything to determine that all of that was actually caused by the motor vehicle collision." With respect to Dr. Yusupov, the court ordered redaction of his report's sentence describing a "professional opinion" that Faulkner's injuries were "casually related to the motor vehicle collision."

**¶7** After a six-day trial, the jury returned verdicts in favor of Faulkner in the amount of $15,000 and in favor of her daughter in the amount of $200,000. The defendants then moved for an award of sanctions against Faulkner under Rule 68. The court imposed an $18,962.05 sanction against Faulkner, which reduced her judgment to $0 and created a $3,962.05 award in favor of the defendants. The court denied Faulkner's motion for a new trial on damages. She appeals.

## DISCUSSION

I.     THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY LIMITING DR. PATEL'S TESTIMONY AND REDACTING DR. YUSUPOV'S REPORT.

**¶8** Faulkner first contends that the superior court improperly limited Dr. Patel's testimony and redacted Dr. Yusupov's report.

**¶9** The superior court has broad discretion in determining whether a party properly disclosed evidence and whether that evidence should be admitted at trial. *Solimeno v. Yonan*, 224 Ariz. 74, 77, ¶ 9 (App. 2010). "Trial judges are better able than appellate courts to decide if a disclosure violation has occurred in the context of a given case and the practical effect of any non-disclosure." *Id.* We will not disturb such

decisions on appeal absent an abuse of discretion. *Id.* We discern no abuse of discretion in the rulings at issue here.[1]

      A.     The Superior Court Did Not Abuse Its Discretion by Limiting Dr. Patel's Testimony.

      1.     Dr. Patel was disclosed as an expert witness.

**¶10** Faulkner contends that she sought to elicit opinion testimony from Dr. Patel as a treating-physician fact witness rather than as an expert. But she disclosed him as both a fact and expert witness. Specifically, she disclosed that she expected Dr. Patel, as a fact witness, to testify "regarding his treatment of [her], the pain and suffering endured by [her], disability, and disfigurement, and any other matters relevant to the claims asserted in this lawsuit, including, but not limited to, opinions regarding causation, treatment and prognosis of [her]." And in her expert disclosure, she added that she expected Dr. Patel to provide opinions regarding causation, permanency, and future medical costs:

> Dr. Patel is expected to opine that [Faulkner's] injuries and/or conditions referenced above were caused and/or made symptomatic by the motor vehicle accident of November 6, 2013. He will further testify that [Faulkner] will require one office visit, at $200-$300 per visit, for the next two to three years; three to four injections per month, at $400-$500 per injection, for the next two to three years; imaging for the next two to three years at $1000 per imaging study four times a year; and neuromuscular therapy at $200-$300 per session two times a week for the next two to three years. He may opine that future care beyond these time frames are [sic] necessary.

> Dr. Patel is expected to testify that [Faulkner's] injuries were caused and or made symptomatic by the motor vehicle crash of November 6, 2013. He is further expected to testify as to whether the injuries are permanent in nature. He may rely [on] and/or reference medical literature.

**¶11** In view of the foregoing, we analyze the preclusion of Dr. Patel's testimony under the then-applicable version of Rule 26.1, which in subsection (a)(6) required disclosure of "the substance of the facts and

---

[1] We note, however, that we would have found no abuse of discretion had the superior court reached opposite conclusions.

opinions to which the expert is expected to testify [and] a summary of the grounds for each opinion."

> 2. The superior court acted within its discretion by determining that Faulkner failed to disclose sufficient grounds for Dr. Patel's proposed expert opinions.

**¶12** When a party fails to timely disclose the substance of the facts and opinions of an expert's expected testimony, the superior court may preclude the party from eliciting that testimony at trial. *Englert v. Carondelet Health Network*, 199 Ariz. 21, 25, ¶ 6 (App. 2000); Rule 37(c)(1). In *Solimeno*, for example, we affirmed the court's grant of a mistrial when the defendants violated their Rule 26.1(a)(6) disclosure obligation by failing to disclose the "substance of the facts and opinions" and a "summary of the grounds" for their standard-of-care expert's opinions. 224 Ariz. at 78, ¶ 15. Similarly here, in view of Faulkner's failure to disclose the required grounds for Dr. Patel's opinions on both causation and future care and costs (and her failure at trial to direct the court to medical records describing causation rather than merely reciting patient history), we hold that the court did not abuse its discretion by precluding Dr. Patel from providing those opinions.[2] For the same reasons, neither did the court abuse its discretion by precluding Dr. Patel from testifying about causation.

**¶13** Citing *Allstate v. O'Toole*, 182 Ariz. 284 (1995), Faulkner contends that the defendants were "lying in wait" and used the disclosure violations as a "weapon" for exclusion. *Allstate* rejected the proposition that the court must automatically exclude witnesses and exhibits for late disclosures where no good cause is shown, and held that "an opposing party's action or inaction in attempting to resolve a discovery dispute short of calling for the exclusion of evidence can be an important factor." *Id.* at 285–88. But an opposing party's inaction is just one factor. *See id.* at 288. And here, unlike the *Allstate* plaintiffs, who untimely filed their disclosure

---

[2]     Faulkner's reliance on *Greco v. Manolakos*, 24 Ariz. App. 490 (1975), is misplaced. In *Greco*, the superior court barred the plaintiff's claim for future medical expenses based on her failure to update her answers to interrogatories. *Id.* at 490–91. We held that on the facts of that case, complete foreclosure of the plaintiff's claim was unwarranted. *Id.* at 491–92. Here, no such drastic sanction was imposed. Faulkner was permitted to testify about her plans for follow-up care with Dr. Patel, and the final jury instructions did not prohibit the jury from addressing future care and costs.

statement after their original attorneys withdrew, *id.* at 286, Faulkner *never* served an adequate disclosure statement regarding the precluded expert testimony. Faulkner had an affirmative duty under Rule 26.1(a)(6) to disclose the substance of, and grounds for, Dr. Patel's expert opinions. *Solimeno*, 224 Ariz. at 80, ¶ 23 (citing *Norwest Bank (Minn.), N.A. v. Symington*, 197 Ariz. 181, 185–86, ¶ 17 (App. 2000) ("[A]t the outset of a case the parties must make a full . . . disclosure of all relevant information . . . . No longer will it be advantageous to play games of semantics ('If he'd have just asked the right question, I would gladly have disclosed the material').")). Faulkner did not do so, and the superior court acted within its discretion to exclude the inadequately disclosed testimony.

        **B.**       **The Superior Court Did Not Abuse Its Discretion by Redacting Dr. Yusupov's Report.**

**¶14**        The superior court redacted the following sentence from Dr. Yusupov's report: "It is my professional opinion to a reasonable degree of medical probability that this patient's lumbar pathologies causally related to the motor vehicle collision that she sustained during the MVA that occurred on 11/6/13."

**¶15**        Faulkner contends that the superior court erred by considering Dr. Yusupov, a treating physician, as an expert witness. But, as with Dr. Patel, Faulkner disclosed Dr. Yusupov as both a fact and an expert witness. And we find no abuse of discretion in the superior court's conclusion that the redacted sentence was the opinion of an expert witness rather than a treating physician. Doctors who offer causation opinions based on their review of another health care provider's records are generally expert witnesses. *Sanchez v. Gama*, 233 Ariz. 125, 128, ¶ 9 (App. 2013); *see also Solimeno*, 224 Ariz. at 79, ¶ 21 ("[T]here is a significant difference between a doctor testifying about raw test results that are included in a disclosed medical record . . . and explaining to the jury the significance of those results . . . ."). And "while causation questions bearing on culpability for an injury . . . *may* be fact-based in a particular case if the professional formed such opinions in treating a patient," *State v. Whitten*, 228 Ariz. 17, 22, ¶ 20 (App. 2011), the superior court reasonably concluded that this was not the case here, where Dr. Yusupov's causation opinion invoked standard expert language and relied on his review of other medical records. Accordingly, Faulkner was required to disclose the grounds for the opinion under Rule 26.1(a)(6). She did not do so, and the superior court did not abuse its discretion by excluding the opinion.

II.   THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY DENYING FAULKNER'S MOTION FOR A NEW TRIAL ON DAMAGES.

¶16        Faulkner next contends that she was entitled to a new trial on damages under Rule 59(a)(1)(E) because her medical expenses far exceeded the jury's award.

¶17        We review the superior court's denial of a new trial motion for an abuse of discretion. *Spring v. Bradford*, 243 Ariz. 167, 170, ¶ 11 (2017). The court must grant a motion for new trial based on insufficient damages if "the damage award is tainted by 'passion or prejudice,' or is 'shocking[ly] or flagrantly outrageous.'" *Soto v. Sacco*, 242 Ariz. 474, 478, ¶ 9 (2017) (citation omitted). "The test for whether the jury award is the result of passion or prejudice is whether the amount of the verdict is so unreasonable and outrageous as to shock the conscience." *Mammo v. State*, 138 Ariz. 528, 532 (App. 1983). A "verdict will not be deemed the result of passion and prejudice if within the range of credible evidence." *Flieger v. Reeb*, 120 Ariz. 31, 33 (App. 1978).

¶18        Faulkner presented evidence to the jury that she incurred $103,217.38 in medical expenses resulting from the collision. The defendants stipulated that the expenses were reasonable, usual, and customary for the listed services, but they disputed that the expenses related to the collision.

¶19        The jury received credible evidence supporting the defendants' position. For example, the defendants presented medical records documenting, less than a month before the collision, Faulkner's "[l]ow back pain" and "persistent discomfort" in her lumbar spine and right shoulder. The jury also heard testimony and evaluated medical records demonstrating that Faulkner's chiropractor observed a 98% improvement in her overall function and pain less than five months after the collision. Further, a defense expert testified that Estervig's vehicle was going no greater than 7.2 miles per hour at the time of the collision, and that the impact would not have caused the long-term injuries alleged by Faulkner, but rather would likely have resulted in "minor transient soreness." An independent medical examiner testified that Faulkner had not incurred any new injuries, and that her pre-existing conditions had not changed because of the collision.

¶20        In view of the foregoing evidence, we cannot say that the jury's award of $15,000 to Faulkner shocks the conscience.

7

III.    THE SUPERIOR COURT PROPERLY AWARDED RULE 68 SANCTIONS.

¶21        Faulkner finally contends that the superior court erred by imposing Rule 68 sanctions.  We review the interpretation and application of the rule de novo.  *Stafford v. Burns*, 241 Ariz. 474, 484, ¶ 38 (App. 2017).

¶22        Rule 68(g) provides that "[a] party who rejects an offer, but does not obtain a more favorable judgment, must pay as a sanction . . . the offeror's reasonable expert witness fees and double the taxable costs . . . incurred after the offer date; and . . . prejudgment interest on unliquidated claims accruing from the offer date."

¶23        Faulkner contends that because the defendants' rejected pretrial offer of judgment made a "hybrid offer" to her and her daughter, the court was required to measure the combined offers ($35,000 to Faulkner and $15,000 to her daughter) against the combined judgments ($15,000 to Faulkner and $200,000 to her daughter) when assessing the propriety of sanctions under Rule 68(g).  We reject Faulkner's argument.  The offer was structured in accordance with Rule 68(f), which prohibits unapportioned offers to multiple offerees, authorizes "apportioned offer[s] to multiple offerees conditioned by acceptance by all of the offerees," and provides that "[t]he sanctions provided in this rule apply to each offeree who did not accept the apportioned offer."[3]   Adoption of Faulkner's theory would transform the defendants' apportioned offer into an invalid unapportioned offer.  The superior court properly measured the $35,000 offer to Faulkner against her $15,000 judgment, and properly awarded sanctions.[4]

---

[3]        Because neither plaintiff accepted the offer, Rule 68(f)(1), which describes the circumstances under which the maker of an apportioned offer may enforce acceptance by fewer than all offerees, does not apply.

[4]        We note, as a general matter, that the correct application of Rule 68 may have counterintuitive and even unjust consequences in some cases.  For example, "[i]f the defendant/offeror underestimates his exposure and the plaintiff/offeree obtains a more favorable judgment—*even by a single dollar*—the offeror stands liable for costs and expert witness fees."  *Stafford*, 241 Ariz. at 484, ¶ 42 (emphasis added).

## CONCLUSION

¶24 We affirm for the reasons set forth above.



AMY M. WOOD • Clerk of the Court
FILED: AA