780 P.2d 442

Amos RODRIGUEZ; Carmelo R. Rodriguez and Rachel I. Rodriguez, husband and wife & parents of Amos Rodriguez, Lydia C. Acuna, mother and next friend of Amos J. Rodriguez, a minor, Plaintiffs/Appellants,

v.

Russel SCHLITTENHART, personal representative of the Estate of Robert E. Hamilton, deceased, Hamilton Farms, a partnership, composed of Robert E. Hamilton, Mary Z. Hamilton, Russel E. Schlittenhart, individually and as trustee, Robyn Ann Hamilton, Susan K. Hamilton, Robert N. Hamilton, Mark K. Hamilton and Cotton City Gin Corp., an Arizona Corporation; Electrical District No. Four, a body corporate and politic, Defendants/Appellees.

No. 2 CA–CV 88–0289.

Court of Appeals of Arizona,
Division 2, Department B.
May 9, 1989.
Review Denied Oct. 24, 1989.*

* Gordon, C.J., of the Supreme Court, was not present and did not participate in the determination of this matter.

Johnson & Mahon by Thomas E. Johnson, Tucson, for plaintiffs/appellants.

John S. Schaper and Sorenson & Moore by J. William Moore and Jones, Skelton & Hochuli by Edward G. Hochuli and Gary H. Burger, Phoenix, for defendants/appellees.

## OPINION

ROLL, Judge.

Plaintiffs/appellants Amos Rodriguez and others appeal from the trial court's denial of their motion for new trial following a jury verdict finding for defendants Hamilton Farms, Russell Schlittenhart, Electrical District No. 4 (ED 4), and others. Rodriguez was seriously injured after coming into contact with a high voltage wire conductor. For the reasons set forth below, we affirm.

## FACTS

Amos Rodriguez was seriously injured on June 23, 1985, at Well Site No. 16, located at a place known as The Moras on Hamilton Farms in Eloy. Hamilton Farms is a partnership formed in 1965 between Russell Schlittenhart and Robert E. Hamilton. Hamilton died in 1982, and the partnership continued between Schlittenhart and Hamilton's widow and children.

ED 4 is a political subdivision of the state. A.R.S. § 48–1701. ED 4 does not generate electricity but is a preferred customer for the purchase of hydroelectricity generated by the federal government. ED 4 provided power through its system to a disconnect point on a pole located east of Tweedy Road in Eloy. From that point, a line ran west 132 feet to Well Site No. 16.

Well Site No. 16 was installed sometime between 1936 and 1942. It consists of an H-frame platform electrical station with three large transformers mounted on a seven-foot high platform. The platform is not enclosed by a fence or otherwise. The transformers converted high voltage power supplied by ED 4 into lower voltage needed to run a nearby pump which produced water for irrigation.

The Moras consisted of Well Site No. 16, the pump, a pond, and several trees. Although Hamilton Farms personnel had posted "No Trespassing" signs in the vicinity and a yellow skull and crossbones symbol on a large metal box next to the transformer platform, The Moras was a common gathering spot for area residents. One church periodically conducted baptisms at the site. Frequently, people swam in the holding tank and had picnics in the vicinity.

On the evening of June 23, 1985, 19-year-old Amos Rodriguez, 18-year-old Ambrosio Sotelo, Amos's cousin Norberta "Cricket" Aguero, and Eleanore Zaragoza traveled to The Moras. When the four young people arrived, a party was already in progress. The two young women left Amos and Ambrosio at The Moras while they traveled to town to purchase some soda. Eventually everyone left The Moras except Ambrosio and Amos. When the two young men saw approaching headlights,

they concluded that it was the return of Eleanore and Cricket. Amos suggested that they hide from the young women as a joke. He proposed that they climb on top of the transformer platform. The car was in fact occupied by Cricket and Eleanore. When the young women arrived at The Moras and didn't see Amos and Ambrosio, they slowly began to drive away. Amos then rose to his feet, striking his head on the high-voltage wire conductor. The electrical charge threw Amos against the transformer and pinned him. Ambrosio jumped from the platform, screaming. Cricket and Eleanore heard the screaming and returned to the area. Ambrosio correctly concluded that it was dangerous to attempt to extricate Amos from the platform and Amos's three companions left the area to get help. Amos remained on the platform and in contact with the electrical conductor. When the trio and others returned, Amos was lying on the ground below the platform. Amos sustained severe and disfiguring electrical burns and was hospitalized for approximately two months.

## PROCEDURAL HISTORY

On March 3, 1986, a complaint was filed on behalf of Amos Rodriguez seeking damages against Hamilton Farms, Electrical District No. 4, and others, for injuries sustained by Amos as a result of the negligent conduct of defendants. Thereafter, an amended complaint was filed adding Amos's parents and Amos J. Rodriguez, Amos's son, as plaintiffs. Thereafter, the trial court entered judgment in favor of all defendants as to the complaint of Amos J. Rodriguez. Trial to a jury commenced on December 1, 1987. On December 17, 1987, the jury returned a unanimous verdict in favor of all defendants. Thereafter, plaintiffs' motion for new trial was denied.

## ISSUES ON APPEAL

On appeal, Rodriguez argues that the trial court (1) erred in making certain evidentiary rulings, (2) incorrectly instructed the jury, and (3) committed cumulative error.

### Evidentiary Rulings

Rodriguez maintains that the trial court erred in four respects regarding evidentiary rulings. These evidentiary rulings pertain to (1) exclusion of evidence of a prior accident involving a transformer, (2) admission of a survey and photographs of other transformer platforms in the vicinity, (3) admission of personal history evidence regarding Russell Schlittenhart, and (4) denial of Rodriguez's motion in limine to exclude evidence of his two children born out of wedlock.

### a. Prior Accident

■ Rodriguez argues that the trial court committed reversible error when it excluded evidence that in 1954 a young child sustained severe electrical burns when she walked through a hole in a fence that surrounded a ground-mounted electrical transformer and came into contact with the transformer. This accident occurred on the farm owned by Robert Hamilton 11 years before the partnership of Hamilton Farms was formed with Schlittenhart. Rodriguez maintains that this evidence was admissible to prove the existence of a dangerous condition, knowledge or notice of that condition, or negligence in allowing it to continue, citing *Grant v. Arizona Public Service Co.*, 133 Ariz. 434, 441, 652 P.2d 507, 514 (1982).

Defendants argue that the 1954 accident was too remote, the 1954 accident involved a ground-mounted transformer rather than a transformer mounted on a platform seven feet above ground, and the difference in age of the respective injured parties is substantial.

The standard of review regarding the admission or rejection of evidence is abuse of discretion. *Throop v. F.E. Young and Company*, 94 Ariz. 146, 155, 382 P.2d 560, 571 (1963); *State v. Stanley*, 156 Ariz. 492, 494, 753 P.2d 182, 184 (App.1988). The trial court may exclude evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Rule 403, Ariz.R.Evid., 17A

A.R.S. The trial court did not abuse its discretion in excluding evidence of this 31–year–old accident involving dissimilar facts.

Rodriguez also argues that even if the trial court did not err initially in excluding evidence of the prior accident, this evidence should have been admitted following defendants' presentation of evidence that no accidents had been reported involving platform transformers. This argument disregards the important distinction between a transformer mounted in the ground and a transformer placed on a platform seven feet above the ground. Defendants maintained that no accidents had occurred involving transformers situated on platforms. The prior accident did not disprove this contention. In addition, counsel for Rodriguez made a tactical decision not to object to this evidence.[1] The admission of defendants' evidence that no accidents had occurred involving platform transformers did not cause evidence of the prior accident involving a ground transformer to become admissible.

█ Rodriguez also argues that insufficient foundation was presented to establish that had accidents occurred involving other platform transformers, defendants would have been aware of such accidents. *Jones v. Pak–Mor Manufacturing Co.*, 145 Ariz. 121, 124, 700 P.2d 819, 822, *cert. denied*, 474 U.S. 948, 106 S.Ct. 314, 88 L.Ed.2d 295 (1985). *See also*, M. Udall & J. Livermore, Arizona Law of Evidence § 85 (2d ed. Supp. 1989). We disagree. Because of the severity of injuries likely to result from incidental contact with transformers, it was not necessary that defendants lay a foundation establishing the taking of affirmative steps to learn of such accidents.

b. *Survey and Photographs of Other Transformer Platforms*

█ Rodriguez argues that the trial court erred in admitting into evidence a notebook prepared by Keith Sobraske, a private investigator hired by Schlittenhart. The notebook contained limited, specific information regarding the dimensions of 71 transformer platforms in the vicinity of Eloy, Coolidge, and Casa Grande and two photographs of each of the 71 platforms. Some of the platforms were selected because they appeared along a particular route in proximity to Well Site No. 16. Defendants concede that the remaining platforms were "selected arbitrarily." Evidence was presented that there were at least 386 transformer platforms in the general geographical vicinity.

Rodriguez argues that the notebook was improperly admitted into evidence because of its random nature and because it merely tended to establish what was done rather than what ought to have been done.

We agree that evidence of less than 20 percent of platform transformers in the community where the accident occurred, selected at random, is of dubious relevance. However, even assuming that this evidence was incorrectly admitted, its admission did not rise to the level of reversible error. Rule 61, Ariz.R.Civ.P., 16 A.R.S. Rodriguez fully cross-examined Sobraske regarding his survey and methods. We also note that Rodriguez presented his own evidence regarding other well sites and offered photographs to support that testimony.

c. *Background Information Regarding Schlittenhart*

█ Rodriguez next maintains that the trial court erroneously permitted counsel for Hamilton Farms to present biographical information regarding Russell Schlittenhart. Rodriguez argues that evidence regarding Schlittenhart's poor childhood and eventual entry into a partnership at Hamilton Farms was irrelevant and impermissibly prejudicial. Schlittenhart argues that this background information was offered in the wake of Rodriguez's portrayal of Schlittenhart as a wealthy and influential member of the community.

---

1. Rodriguez's counsel believed that the trial court would be more inclined to admit the prior accident evidence if Schlittenhart presented evidence that no accident had occurred involving transformers positioned on platforms.

On three occasions during direct examination of Schlittenhart, plaintiffs' counsel objected and requested bench conferences. Discussions during these bench conferences were unrecorded. Accordingly, we must treat Rodriguez's objections as general. A general objection does not preserve an issue for appeal if any part of the evidence elicited is relevant. *Grant v. Arizona Public Service Co.*, 133 Ariz. 434, 450, 652 P.2d 507, 523 (1982). The trial court did not abuse its discretion in permitting limited background information. In addition, Rodriguez could have moved to strike specifically objectionable testimony from Schlittenhart, but did not do so. We find no error.

### d. *Rodriguez's Children*

█ Rodriguez argues that the trial court erroneously admitted evidence that he was the father of two children. Rodriguez was not married. Defendants argue that the evidence was relevant as to damages. Rodriguez fathered one child by Lydia Acuna prior to the accident. He fathered a second child by Ms. Acuna after the accident. Defendants argue that evidence of Rodriguez's continued relationship with Lydia Acuna was important evidence offsetting the testimony of Rodriguez that he suffered psychological scars as a result of his physical injuries, including scars as to how others perceived him. At trial, defendants did not attempt to focus upon the birth of these children.

Rodriguez did not raise this issue in his motion for new trial. Our scope of appellate review is ordinarily limited to matters raised in a motion for new trial. *Morn v. City of Phoenix*, 152 Ariz. 164, 168, 730 P.2d 873, 877 (App.1986); *Matcha v. Winn*, 131 Ariz. 115, 116, 638 P.2d 1361, 1362 (App.1981).

Rodriguez argues that *Taylor v. Southern Pacific Transportation Co.*, 130 Ariz. 516, 637 P.2d 726 (1981) supports his position that this evidence was inadmissible. *Taylor* held that a wrongful death claimant's remarriage was inadmissible and that the collateral source rule was the primary reason for excluding such evidence. Specifically, the supreme court stated that evidence of remarriage could improperly result in mitigation of damages because the jury might conclude that the new spouse would prevent the claimant from suffering the losses otherwise resulting from the death of the claimant's spouse. The supreme court concluded that no windfall should result in favor of a tortfeasor simply because of the remarriage. *Taylor* is inapplicable to the matter before us.

The trial court did not abuse its discretion in denying Rodriguez's motion in limine to exclude evidence of the fact that Rodriguez fathered two children by Lydia Acuna.

### *Jury Instructions*

Rodriguez argues that the trial court erroneously instructed the jury in several respects. The standard of review for jury instructions is whether, considering the instructions as a whole, the challenged instructions misled the jury as to the proper rules of law. *Kuhnke v. Textron, Inc.*, 140 Ariz. 587, 592, 684 P.2d 159, 164 (App. 1984).

### a. *Recreational Users*

█ The trial court instructed the jury regarding the duty of care owed by landowners to trespassers, constant trespassers, and recreational users. Rodriguez argues that the trial court should not have instructed the jury regarding the standard of care landowners owe to recreational users. Rodriguez argues that the pretrial statement recited that Rodriguez used the premises without Schlittenhart's knowledge or consent and Schlittenhart testified that consent was never given to use the property.

However, Rodriguez presented evidence that it was a common occurrence for area residents to use The Moras. Rodriguez testified that he was observed in the vicinity of the transformer by a night watchman the evening the accident occurred and was not told to leave. This instruction was important because the jury was told that if Rodriguez was a recreational user or a trespasser, the jury was required to return

a verdict for the defendants because insufficient evidence existed as a matter of law to establish that the defendants acted intentionally, wilfully, or maliciously.

It was appropriate to instruct the jury regarding the duty of care owed to a recreational user because a recreational user may obtain the owner's permission to use the premises expressly *or impliedly*. The jury instruction was a correct statement of the law and was supported by the evidence. A.R.S. § 33–1551(B).

■ Rodriguez also suggests that the jury instruction defining the duty of care owed to trespassers was incorrect because "it ... [created] the misleading impression that liability ... to [trespassers and constant trespassers] required wilful and wanton disregard for his safety." The instruction to which Rodriguez objects stated:

A trespasser is defined as a person who enters or remains on another's land without a privilege to do so. A privilege can be created by the possessor's consent or otherwise. A landowner owes no duty to trespassers except to neither wilfully nor intentionally inflict injury upon them.

This instruction was sandwiched between two instructions regarding the duty of care owed *constant* trespassers. It is assumed that the jury will follow the instructions given. *Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713, 723 (1979). The position of the respective instructions prevented confusion in this regard.

b. *Restatement § 334*

■ Rodriguez argues that the trial court erred when it failed to instruct the jury, in the precise language of the instruction submitted by Rodriguez, regarding the duty of care owed to constant trespassers. Specifically, Rodriguez argues that although he submitted a jury instruction tracking the identical language of Restatement (Second) of Torts § 334 (1965), the trial court incorrectly modified the instruction. The jury instruction requested by Rodriguez stated:

You are instructed that a possessor of land who knows, or from facts within his knowledge, should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm therein caused other persons by the possessor's failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for other person's safety.

However, the trial court instructed the jury as follows in this regard:

A possessor of land who knows or should know trespassers constantly intrude upon a limited area of his land is subject to liability for bodily harm caused to the trespasser by the possessor's negligence in carrying on an activity involving a risk of death or serious bodily harm.

Defendants argue that the trial court simply chose to use the term "negligence" in place of the definition of negligence. This was permissible, defendants contend, because negligence was defined in another section of the jury instructions as a failure "to act as a reasonably careful person would act under the circumstances." We agree.

■ Rodriguez next objects to the jury instruction that informed the jury that before they could conclude that Rodriguez was a constant trespasser, Rodriguez had the burden of proving:

1. That Plaintiff was a trespasser on Defendant's land.
2. Defendants knew or should have known that trespassers constantly intruded upon the limited area where the Plaintiff was injured.
3. That pumping irrigation water using these transformers is an activity involving a risk of death or serious bodily harm.
4. That the Defendants were negligent.
5. That the Plaintiff was injured.
6. That the Defendant's negligence was a cause of the injury to the Plaintiff.
7. Plaintiff's damages.

Rodriguez argues that this instruction was incorrect because the dangerous activity was described as "pumping irrigation water using these transformers" rather than positioning transformers with exposed wires in a vicinity where people intruded.

Rodriguez does not cite to the record where he objected to the instruction on this ground nor does our review of the record reveal any objection. A party may not assign error for the giving of an instruction unless he objects and distinctly states what is objected to and the grounds for objection. Rule 51(a), Ariz.R.Civ.P., 16 A.R.S. Rodriguez has therefore waived any objection in this regard. *Long v. Corvo*, 131 Ariz. 216, 217, 639 P.2d 1041, 1042 (App.1981).

### c. *Duty of Electrical District*

 Rodriguez also argues that the trial court incorrectly instructed the jury regarding the duty of care owed by the electrical district. Rodriguez's requested jury instruction stated:

DUTY OF ELECTRICAL DISTRICT

Electrical Districts are under a duty to exercise that degree of care which is equal in measure with the danger to be apprehended with contact with high-voltage electric power. The electrical utility is not required to totally protect from the danger of high-voltage electric power everywhere, but only at places where people may legitimately go for work, business, or pleasure; that is, where they may reasonably be expected to go.

The key to the concept of duty and consequent obligation to use reasonable care is the foreseeability of harm.

Rodriguez argues that this instruction was the proper instruction because it measured ED 4's duty by reference to the danger foreseeable to persons expected to be near the electrical power. In support of this argument, Rodriguez relies on *Salt River Valley W.U. Assn. v. Compton*, 39 Ariz. 491, 495, 8 P.2d 249, 250 (1932), *overruled on other grounds, MacNeil v. Perkins*, 84 Ariz. 74, 80, 324 P.2d 211, 215 (1958), and *Monares v. Wilcoxson*, 153 Ariz. 359, 361, 736 P.2d 1171, 1173 (App.1987). However, *Salt River Valley W.U. Assn.* and *Monares* involved the duty owed by a distributor of electricity in the operation, maintenance, or inspection of its own facilities. In this case, ED 4 did not own, maintain, or operate the transformer involved.

The instruction given by the trial court stated:

The electrical district has a duty of care to the Plaintiff only if it knew or reasonably should have known of an unreasonably dangerous condition on the lands of Defendants, Hamilton Farms, and continued to provide electrical energy with such knowledge.

In order to find Electrical District No. Four negligent, you must find from the evidence that:

(1) A condition existed on the Defendant Schlittenhart and Hamiliton [sic] Farms' property which presented an unreasonable risk of harm to the Plaintiff and,

(2) That the Defendant knew or reasonably should have known that such condition and unreasonable risk existed and nonetheless continued to supply electrical energy to Hamilton Farms.

This instruction is based on *Scarborough v. Central Arizona Light and Power Co.*, 58 Ariz. 51, 57, 117 P.2d 487, 489 (1941). In that case, the defendant, a natural gas distributor, turned on the gas at meters outside a house without inspecting the condition of the pipes inside the house. Some of the pipes inside the house were uncapped, which permitted gas to permeate the house, injuring the plaintiff. The supreme court held that the gas company could only be liable if it had actual knowledge or reasonable ground to believe that the pipes in the house were defective.

Although Arizona courts have not decided the duty of a supplier of electricity that does not own, maintain, or operate the facility, some jurisdictions that have addressed the issue have held that the supplier must have actual knowledge of the existence of a dangerous condition before it can be held liable for failing to terminate electrical service. *Ianire v. University of Delaware*, 244 A.2d 427, 428 (Del.1968); *Virginia Electric and Power Co. v. Daniel*, 202 Va. 731, 733, 119 S.E.2d 246, 249 (1961); *Oesterreich v. Claas*, 237 Wis. 343, 344, 295 N.W. 766, 768 (1941). This view is far more restrictive than the approach suggested by *Scarborough*. In *Naki v. Hawaiian Electric Co.*, 50 Hawaii 416, 419, 442 P.2d 55, 59 (1968), the court took an approach similar to *Scarborough* and held that an electric company must have actual

knowledge or reason to know of the danger before it can be held liable. However, under either of these approaches, Rodriguez was not prejudiced by the jury instruction given regarding the duty of ED 4.

In addition, when instructions were settled, Rodriguez argued that his proposed instruction more "succinctly sets forth" the law. Failure of an objection to state "distinctly the matter objected to and the grounds of the objection" precludes appeal on that issue. Rule 51(a), Ariz.R.Civ.P., 16 A.R.S.; *Long v. Corvo*, 131 Ariz. 216, 217, 639 P.2d 1041, 1042 (App.1981).

### Cumulative Error

Finally, Rodriguez argues that even if the individual grounds of error do not by themselves require the granting of a new trial, a new trial is required when these errors are considered cumulatively. We find no cumulative error requiring the granting of a new trial.

We affirm.

LACAGNINA, C.J., and HOWARD, J., concur.