986 P.2d 247

**Todd R. SMITH, a single man, Plaintiff–Appellant,**

v.

**ARIZONA BOARD OF REGENTS, Arizona State University and Associated Students of Arizona State University; subdivisions of the State of Arizona, Defendants–Appellees.**

No. 1 CA–CV 98–0627.

Court of Appeals of Arizona, Division 1, Department D.

July 8, 1999.

Reconsideration Denied Aug. 17, 1999.

M. Wayne Lewis, Chandler, Attorney for Appellant.

Jennings, Haug & Cunningham, L.L.P. by Larry J. Crown, Jack R. Cunningham, Phoenix, Attorneys for Appellees.

## OPINION

GERBER, Judge.

¶1 We consider whether Arizona's recreational use statute, Arizona Revised Statute Annotated ("A.R.S.") section 33–1551, shields appellees from liability for injuries suffered by appellant while using a carnival-type apparatus temporarily placed on appellees' property. We conclude that this statute does not provide tort immunity in such circumstances, and we therefore reverse the summary judgment entered in favor of appellees and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2 In the spring of 1997, appellant Todd R. Smith ("Smith") was a student at Arizona State University ("ASU") and a member of the Associated Students of ASU ("ASASU"). ASASU sponsored an event called the "Mardi Gras" on an open area of campus near the ASU library. No admission fee was required to participate in the event, which included several carnival-type activities.

¶3 One of the activities offered at the "Mardi Gras" was the "Trampoline Thing," a jumping apparatus consisting of a combination of a trampoline and bungee cord. While doing somersaults and maneuvers on the "Trampoline Thing," Smith collided with the trampoline frame and was seriously injured.

¶4 Smith sued the Arizona Board of Regents, ASU, and ASASU (collectively "ASU") as well as the entities that contracted with ASASU to provide the "Trampoline Thing" for the event. He alleged, in part, that appellees negligently failed to (1) adequately maintain the apparatus, (2) warn users of its known dangers, and (3) properly supervise its use. He also alleged that the ASU appellees, as owners and occupiers of the premises where his injuries occurred, were liable for permitting the inherently dangerous activity and for negligently supervising the activities of the other defendants.

¶5 ASU moved for summary judgment on the basis that it was immune from liability under Arizona's recreational use statute, A.R.S. section 33–1551. It argued that, as a public land owner, it was not liable to Smith, a recreational user of the property, unless it was guilty of willful, malicious, or grossly negligent conduct that directly caused Smith's injury. ASU asserted that because it held its property open to the public for a recreational event without an admission fee, the statute protected it from liability.

¶6 In response, Smith argued that he paid for admission to the event by paying tuition and fees from which ASASU received funds for student activities such as the "Mardi Gras." He further maintained that ASU's use of its campus for the "Mardi Gras" event and providing the "Trampoline Thing" for the use of participants did not constitute recreational

uses for statutory immunity. He argued that the ASU property as used for the event did not fall within the statutory definition of "premises" nor was he an "educational user" or "recreational user" intended by the statute. He also asserted that if the statute applied, it was unconstitutional.

¶ 7 The trial court granted ASU's motion for summary judgment. It reasoned that Smith was a recreational user of the property and found no disputed factual issues showing that ASU was guilty of willful, malicious, or grossly negligent conduct. Smith timely appealed from the judgment entered in favor of ASU.

## DISCUSSION

¶ 8 Arizona's recreational use statute, A.R.S. section 33–1551, was enacted in 1983 and amended in 1993, 1994, and 1998. *See* Act of Apr. 8, 1983, ch. 82, 1983 Ariz. Sess. Laws 259; Act of Apr. 13, 1993, ch. 90, § 25, 1993 Ariz. Sess. Laws 261; Act of Apr. 14, 1994, ch. 113, § 7, 1994 Ariz. Sess. Laws 308; Act of Apr. 24, 1998, ch. 22, 1998 Ariz. Sess. Laws 260. The version of A.R.S. section 33–1551 in effect in 1997 when Smith's accident occurred read in relevant part:

A. A public or private owner, easement holder, lessee or occupant of premises is not liable to a recreational or educational user except upon a showing that the owner, easement holder, lessee or occupant was guilty of wilful, malicious or grossly negligent conduct which was a direct cause of the injury to the recreational or educational user.

\* \* \* \*

C. As used in this section:

1. "Educational user" means a person to whom permission has been granted or implied without the payment of an admission fee or other consideration to enter upon premises to participate in an educational program, including but not limited to, the viewing of historical, natural, archaeological or scientific sights.

\* \* \* \*

3. "Premises" means agricultural, range, open space, park, flood control, mining, forest or railroad lands, and any other similar lands, wherever located, which are available to a recreational or educational user, including, but not limited to, paved or unpaved multi-use trails and special purpose roads or trails not open to automotive use by the public and any building, improvement, fixture, water conveyance system, body of water, channel, canal or lateral, road, trail or structure on such lands.

4. "Recreational user" means a person to whom permission has been granted or implied without the payment of an admission fee or other consideration to travel across or to enter upon premises to hunt, fish, trap, camp, hike, ride, exercise, swim or engage in similar pursuits. The purchase of a state hunting, trapping or fishing license is not the payment of an admission fee or other consideration as provided in this section.

¶ 9 Whether the recreational use statute applies here is a question of law that this court reviews *de novo*. *See Stramka v. Salt River Recreation, Inc.*, 179 Ariz. 283, 285, 877 P.2d 1339, 1341 (App.1994). Because section 33–1551 limits common-law liability, we must construe it strictly to avoid any overbroad statutory interpretation that would give unintended immunity and take away a right of action. *See Ward v. State*, 181 Ariz. 359, 362, 890 P.2d 1144, 1147 (1995); *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 273, 872 P.2d 668, 677 (1994). When interpreting a statute, we attempt to give effect to the legislative intent. *See Calvert v. Farmers Ins. Co. of Arizona*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). In determining the legislature's intent, we look to the policy behind the statute as well as the words, context, subject matter, and consequences of the statute.

¶ 10 The legislative history of Arizona's recreational use statute indicates that the act "was designed to encourage landowners to open certain lands to recreational users by limiting liability for injuries to those users." *Bledsoe v. Goodfarb*, 170 Ariz. 256, 259, 823 P.2d 1264, 1267 (1991). Representative Jim

Ratliff, a sponsor of the legislation, stated during a committee meeting that the proposed statute "would promote the use of vast areas of land not now being used for recreational purposes." *Recreation Property: Minutes of Hearing on H.B.2026 Before the House Judiciary Comm.*, 36th Leg., 1st Reg. Sess. 5 (Feb. 14, 1983), *cited in Ward*, 181 Ariz. at 362, 890 P.2d at 1147; *Bledsoe*, 170 Ariz. at 259 n. 2, 823 P.2d at 1267 n. 2; *Stramka*, 179 Ariz. at 286, 877 P.2d at 1342.

¶ 11 Those minutes also indicate that the language of the legislation derives from the model act proposed by the Council of State Governments in 1965. *See Recreation Property: Minutes of Hearing on H.B.2026 Before the House Judiciary Comm.*, 36th Leg., 1st Reg. Sess. 3 (Feb. 14, 1983) (statement of Assistant Attorney General Joseph Clifford), *cited in Bledsoe*, 170 Ariz. at 260 n. 4, 823 P.2d at 1268 n. 4. The purpose of the model act is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." *Ward*, 181 Ariz. at 362, 890 P.2d at 1147, *quoting* Suggested State Legislation on Public Recreation on Private Lands § 1, *in* 24 Council of State Governments, *Suggested State Legislation* 150, 150 (1965).

¶ 12 In light of this intent and considering the express language of A.R.S. section 33–1551, we nonetheless conclude that under the circumstances of this case, appellees are not protected from liability. Because we reach this conclusion based on an examination of what constitutes "premises" and "recreational user" in the circumstances presented here, we do not reach Smith's argument that his tuition and fee payments constituted consideration for participation in the "Mardi Gras" event.

¶ 13 Smith argues that the ASU campus, and particularly the area of the "Mardi Gras," is not the type of land defined in section 33–1551(C)(3) as "premises." He notes that the listed premises are lands characteristically rural or semi-rural and not associated with urban uses such as a college campus or carnival event. ASU responds that "Hayden Park," an open, grassy area on the campus, is precisely the type of real property included in the broad statutory definition of "premises." It points out that the statute applies to open spaces, parks, and other similarly situated lands wherever located.

¶ 14 We assume, without deciding, that ASU is correct in its assertion that grassy, park-like areas on the campus fall within the statute. However, Smith was not injured by a condition of the land but by a piece of equipment stationed temporarily on the campus premises.

¶ 15 In the large number of cases interpreting state recreation use statutes nationwide, we have been unable to find a case with a situation in which the protection of such a statute was claimed when the injury occurred on carnival-type equipment. In *Scott v. Wright*, 486 N.W.2d 40 (Iowa 1992), the Iowa Supreme Court considered the effect of that state's recreational use statute in analogous circumstances. A plaintiff was injured during a hay wagon ride when the driver lost control of the tractor pulling the wagon on a wet, grassy slope on farm premises. The plaintiff conceded that a hayride was a recreational activity, and the defendants argued that Iowa's recreational use statute immunized them from any liability for recreational activities on land used for agricultural purposes.

¶ 16 The *Scott* court noted that the lawsuit against the owners of the farm did not rest on duties addressed by the statute but rather on vicarious liability for negligence in the operation of a motor vehicle. It explained that the statute immunized landowners from only two specific duties of care toward persons using agricultural property for recreational purposes: the duty to keep the premises safe and the duty to warn of dangerous conditions. The court continued:

> Nothing in the language of [the statute] suggests a legislative intent to immunize all negligent acts of landowners, their agents, or employees. Nor do we believe such broad application of the statute would serve the public purpose envisioned by the legislature. Though focused on reducing landowner liability, the statute was also enacted to serve "a growing need for additional recreation areas for use by our citi-

zenry." The public's incentive to enter and enjoy private agricultural land would be greatly diminished if users were subject, without recourse, to human error as well as natural hazards.

*Id.* (citation omitted). The court thus held that because the language of the statute addressed premises liability and the legislative history revealed no other motive for its passage, the statute did not provide immunity for the landowners.

¶ 17 One might argue that *Scott* is distinguishable because the "Trampoline Thing" became a part of the ASU premises, even though temporarily. However, we see no indication from section 33–1551 that the legislature would expect such a commercial apparatus to fall within the definition of "premises" including such things as "any building, improvement, fixture, water conveyance system, body of water, channel, canal or lateral, road, trail or structure on such lands." The intent of the statute appears to be to encourage accessibility and use of outdoor, open spaces for recreation. The structures encompassed by the statute appear to be in the nature of bridges, dams, docks, piers, mine shafts, railroad trestles, and fences and gates, i.e., structures that have some relation to the usual use of the property. *See Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.*, 510 Pa. 1, 507 A.2d 1, 13 (1986) (legislature intended to limit meaning of "buildings, structures and machinery or equipment when attached to the realty" to ancillary structures attached to open space lands made available for recreation); *Eschete v. Mecom*, 509 So.2d 840, 843 (La.App.1987) (recreational use statute does not apply where injury was caused by instrumentality resulting from commercial enterprise on land covered by statute that one would not normally encounter in true outdoors).

¶ 18 In considering even permanent improvements, such as outdoor swimming pools, courts generally conclude that landowners are not immune from liability when the injuries occurred in or on those improvements. For example, in *Keelen v. State, Dept. of Culture, Recreation and Tourism*, 463 So.2d 1287 (La.1985), the court held that the state was not immune from liability under the recreational use statute for a drowning in a swimming pool in a state park because the pool was not the type of instrumentality commonly found in the true outdoors. The court reasoned that

reference to the types of recreational activities specified in the statutes (hiking, boating, horseback riding, etc.) indicates that the legislature envisioned immunity for landowners who offer their property for recreation that can be pursued in the 'true outdoors.' ... [W]hen the instrumentality, whether found in an urban or rural locale, is of the type usually found in someone's backyard, then the statutes afford no protection.

*Id.* at 1290. *See also Gibson v. Keith*, 492 A.2d 241 (Del.1985) (recreation use statute not applicable to urban or residential areas improved with swimming pools); *Erickson v. Century Management Co.*, 154 Ga.App. 508, 268 S.E.2d 779 (1980) (statute does not cover motel swimming pool but instead applies to larger bodies of water such as lakes and seashores even though "swimming" is listed among recreational purposes); *Boileau v. DeCecco*, 125 N.J.Super. 263, 310 A.2d 497 (1973), *aff'd per curiam*, 65 N.J. 234, 323 A.2d 449 (1974) (legislature did not intend to grant tort immunity to owners of swimming pools in residential areas); *Ithier v. City of Philadelphia*, 137 Pa.Cmwlth. 103, 585 A.2d 564 (1991) (outdoor swimming pool is an improvement on the land not covered by the recreation act).

¶ 19 Although we are not confronted with a swimming pool, we are nonetheless dealing with an artificial recreational apparatus not naturally occurring in the "true outdoors." Instead, the recreational apparatus apparently is only available commercially and does not provide a form of recreation to be found in the "true outdoors.". Given the type of premises and recreational activities protected by A.R.S. section 33–1551, we do not believe the legislature intended to immunize a landowner for injuries on such a transient apparatus placed temporarily on its property.

¶ 20 Furthermore, Smith did not allege that some condition of the premises owned by ASU caused the injury. Instead, he as-

serted that ASU permitted an inherently dangerous activity to which it invited students and the public and that it negligently supervised the activities of the defendants who provided the "Trampoline Thing." Thus, Smith's lawsuit does not truly hinge on premises liability, which the recreation use statute addresses, but rather involves negligent placement of and supervision over a dangerous apparatus.

¶ 21 In addition, Smith was not a recreational user under the statute because at the time he was injured he was not engaged in the type of recreational activity contemplated by the statute. Section 33–1551 defines "recreational user" as a person who enters upon premises "to hunt, fish, trap, camp, hike, ride, exercise, swim or engage in similar pursuits." A.R.S. § 33–1551(C)(4). With the possible exception of "exercise," these are all activities done in natural outdoor conditions rather than on a commercial apparatus. To be consistent with the other listed activities, "exercise" must be read to refer to such activities as running, jogging, cycling or climbing. Jumping on a trampoline while attached to a bungee cord is not an activity consistent with these listed recreational activities because Smith did not bring the equipment with him. Instead, ASU invited him to use it. We therefore conclude that Smith was not a recreational user for purposes of A.R.S. section 33–1551.

¶ 22 ASU cites *Hall v. Turtle Lake Lions Club*, 146 Wis.2d 486, 431 N.W.2d 696 (App. 1988), as supporting its arguments for application of the statute. In *Hall*, the plaintiff was injured when he stepped in a hole on the grounds of a park during a fair sponsored by the local Lions Club. *Hall* is distinguishable from the case before us for two reasons. First, even though the plaintiff in *Hall* was at a fair that included carnival rides placed on the property for that event, the plaintiff was not injured on a ride but by a natural condition on the land. Recreational use statutes are designed to protect landowners from that type of premises liability. Here, in contrast, Smith was not injured by a condition of the land but rather on an apparatus temporarily brought onto the land by the landowner.

¶ 23 Second, the Wisconsin statute applied in *Hall* contained a statement of the intended scope of the statute that provided that "this legislation should be liberally construed in favor of property owners to protect them from liability." *Hall*, 431 N.W.2d at 697. In contrast, the Arizona legislature has made no such statement, and our courts have determined that our recreational use statute should be construed strictly, to avoid overbroad interpretations that give unintended immunity and take away common-law rights. *See Ward*, 181 Ariz. at 362, 890 P.2d at 1147. *Hall* does not convince us that Arizona's statute immunizes appellees from liability under the circumstances here.

¶ 24 In summary, we conclude that A.R.S. section 33–1551 does not provide appellees with immunity in the situation presented here. Accordingly, we reverse the summary judgment entered in favor of appellees and remand for further proceedings. Because we hold that the statute does not apply, we need not address Smith's constitutional arguments.

CONCURRING: SARAH D. GRANT, Judge, and MICHAEL D. RYAN, Judge.