4 P.3d 973

**Michelle HERMAN and Michael Herman, wife and husband, Plaintiffs/Appellants,**

v.

**The CITY OF TUCSON, a body politic, Defendant/Appellee.**

**No. 2 CA–CV 99–0064.**

Court of Appeals of Arizona, Division 2, Department A.

Nov. 23, 1999.

Review Denied May 23, 2000.

Law Office of William D. Nelson, P.C. by William D. Nelson, Tucson, for Plaintiffs/Appellants.

Thomas J. Berning, Tucson City Attorney by Michael E. Owen, Tucson, for Defendant/Appellee.

## OPINION

PELANDER, Presiding Judge.

¶ 1 The appeal in this personal injury/premises liability action presents questions of the interpretation and constitutionality of Arizona's recreational use immunity statute, A.R.S. § 33–1551. We hold that,

because plaintiff/appellant Michelle Herman did not come within the statutory definition of "recreational user" at the time of her accident in a Tucson municipal park, the City is not entitled to qualified immunity under the statute, and the trial court erred in granting summary judgment in its favor on that basis.

## BACKGROUND

¶ 2 The pertinent facts in this case are undisputed. On September 2, 1995, a local radio station sponsored a fund-raising music festival (Jamaicafest) in the band shell area of Reid Park, which the City owns and maintains. The radio station rented booth space to vendors for Jamaicafest, charging each food vendor $275, which included a $10 City vendor permit fee for the privilege of selling food, drinks, and other products in the park. Michelle Herman worked for one of the vendors, Eegee's, which paid the required fees to the station so Eegee's could sell its products at Jamaicafest.

¶ 3 Eegee's assigned Michelle to work at its booth near the band shell. She went to the park that day for the sole purpose of working. After parking her vehicle in the lot closest to the band shell, Michelle was injured as she walked from the parking lot toward the band shell when she stepped in a gopher hole and fell.

¶ 4 In their complaint, the Hermans claimed that the City's negligence had caused Michelle's injury. In defense, the City asserted qualified immunity under the recreational use statute. On the parties' cross-motions for summary judgment relating to that defense, the trial court ruled in favor of the City, concluding that the statute applied to grant the City immunity because the Hermans had "never alleged or argued gross negligence." The court also denied the Hermans' request "to declare A.R.S. § 33–1551 unconstitutional." This appeal followed the trial court's entry of judgment and its denial of the Hermans' motion for reconsideration.

## DISCUSSION

■ ¶ 5 Because the facts are undisputed, we determine de novo whether the trial court correctly applied the substantive law to those facts. *Carden v. Golden Eagle Ins. Co.*, 190 Ariz. 295, 296, 947 P.2d 869, 870 (App.1997); *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996). "We also review *de novo* statutory interpretation issues and constitutional claims because they involve questions of law," *Prince*, 185 Ariz. at 45, 912 P.2d at 49, including the question of "[w]hether the recreational use statute applies here." *Smith v. Arizona Bd. of Regents*, 195 Ariz. 214, 986 P.2d 247, ¶ 9 (App. 1999).

¶ 6 The statute, as amended in 1993 and applicable to this case, provides in part that a public owner of "premises" is not liable to a "recreational ... user" unless the owner directly caused injury to the recreational user through willful, malicious, or grossly negligent conduct. § 33–1551(A). As defined in the statute, "premises" includes "park[s] ... and any other similar lands, wherever located, which are available to a recreational ... user." § 33–1551(C)(3). The statute defines a "[r]ecreational user" as "a person to whom permission has been granted or implied without the payment of an admission fee or other consideration to travel across or to enter upon premises to hunt, fish, trap, camp, hike, ride, exercise, swim or engage in similar pursuits." § 33–1551(C)(4).

■ ¶ 7 The Hermans contend the statute does not apply to this case for the following reasons: Michelle was not a recreational user at the time of her accident; Jamaicafest was a civic event that did not qualify as a "recreational use"; the "fee paid" exception to immunity applies because the City received consideration for Michelle to be on the premises to sell goods at Jamaicafest; and the area where Jamaicafest was held did not constitute "premises" under the statute. Alternatively, the Hermans contend the statute violates the anti-abrogation clause in article 18, § 6, of the Arizona Constitution. Because we must endeavor to decide cases on nonconstitutional grounds if possible, *Ramirez v. Health Partners of Southern Arizona*, 193 Ariz. 325, ¶ 10, 972 P.2d 658, ¶ 10 (App.1998), we first address the Hermans' statutory arguments. *See Prince.*

¶ 8 The statute applies only if Michelle was a recreational user. The Hermans contend, and the City does not dispute, that Michelle was present at Reid Park on the accident date only because the City had permitted Eegee's to sell food products at Jamaicafest and that she was there solely to work, rather than "to hunt, fish, trap, camp, hike, ride, exercise, swim or engage in similar pursuits." § 33–1551(C)(4). Therefore, they argue, Michelle was not a recreational user at the time she was injured. The Hermans further contend the record contains no evidence that any of the activities listed in § 33–1551(C)(4) "were undertaken" or "could have been performed" that day at the Reid Park bandshell [sic] area which was exclusively devoted to the civic, fund-raising activities of Jamaicafest."

¶ 9 In contrast, the City contends the statute's "definition of recreational user does not require a person to be engaged in recreational pursuits in order to be covered by the definition." Rather, the City argues, "the permission granted by the premises owner, not the behavior or subjective intentions of each person who enters the land," is determinative. According to the City, Michelle's right of access to the park was no different nor more restrictive than the City's grant of access to the general public, in that she had permission to enter the park to engage in recreational pursuits without paying a fee. Therefore, the City asserts, "that [she] accepted the invitation to enter, but did so with the intention of working rather than recreating, does not alter the parameters of the City's grant of access or change her status as a recreational user."

¶ 10 The City further maintains that, if a person's purpose and subjective intent in visiting a public park were controlling factors in determining whether he or she is a "recreational user," the public landowner would face liability exposure for simple negligence to claimants such as:

- A paid babysitter watching children in the park[ ];
- Parents who entered the park solely to search for their child who had cut school;
- Church workers who feed and minister to the homeless;
- Performers and musicians who play at free concerts but are paid by their employers;
- Promoters and other independent contractors using the park not for recreation but for their own private benefit;
- Employees of a corporation who decide to hold an outside business meeting.

According to the City, such a result "would undermine the legislature's intent of assuring the premises owners they will not be liable for simple negligence so they will be comfortable granting the public free access to their land."

¶ 11 Countering the City's arguments, the Hermans contend the City's expansive interpretation of recreational user would include "anyone who [pays no fee and] enters a park, for any reason, ... because that person 'could have' entered the park to recreate." At oral argument, the City conceded that, indeed, is its position. To conclusively establish recreational user status based solely on the City's grant of permission to all persons to enter a park, the Hermans argue, would result in "a 'blanket immunity' that covers everyone in the world," including the following:

[A]n employee of a food vendor such as Michelle Herman, who enters the park to work; a person making a delivery of goods that the City had ordered to the maintenance yard at Reid Park; a Department of Public Safety officer responding to a call for assistance by a park ranger; a criminal entering the park to commit murder and rape; and emergency medical personnel who enter the park to assist an injured athlete. . . .

¶ 12 Based on well-established rules of statutory construction, we find the Hermans' argument, but not the City's, persuasive. First, and perhaps most importantly, because § 33–1551 limits the City's liability, we must narrowly or strictly construe the statute. *See Ward v. State,* 181 Ariz. 359, 362, 890 P.2d 1144, 1147 (1995) ("Because the statute limits common-law liability, we must construe it strictly."); *Smith,* 195 Ariz. 214, 986 P.2d 247, ¶ 9 ("[W]e must construe [§ 33–1551] strictly to avoid any overbroad

statutory interpretation that would give unintended immunity and take away a right of action.").

¶ 13 Second, our primary function "is to find and give effect to legislative intent." *Mail Boxes, Etc., U.S.A. v. Industrial Comm'n,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). "We focus first on the statutory wording and, if it is ambiguous or inconclusive, we consider the statute's 'context, subject matter, historical background, effects, consequences, spirit, and purpose.'" *Ramirez,* 193 Ariz. 325, ¶ 11, 972 P.2d 658, ¶ 11, *quoting Mail Boxes, Etc.,* 181 Ariz. at 122, 888 P.2d at 780.

¶ 14 Third, when "a statute expressly defines certain words and terms used in the statute, the court is bound by the legislative definition in all cases where rights of parties litigant are based upon statute." *Walker v. City of Scottsdale,* 163 Ariz. 206, 209, 786 P.2d 1057, 1060 (App.1989). In addition, "we must read the statute as a whole and give meaningful operation to each of its provisions." *Ruiz v. Hull,* 191 Ariz. 441, ¶ 35, 957 P.2d 984, ¶ 35 (1998), *cert. denied sub nom. Arizonans for Official English v. Arizona,* 525 U.S. 1093, 119 S.Ct. 850, 142 L.Ed.2d 703 (1999). That is to say, we must avoid interpreting a statute so as to render any of its language mere "surplusage," but rather, must give meaning to "each word, phrase, clause, and sentence ... so that no part of the statute will be void, inert, redundant, or trivial." *Walker,* 163 Ariz. at 210, 786 P.2d at 1061. *See also Phoenix Newspapers, Inc. v. Dep't of Corrections,* 188 Ariz. 237, 244, 934 P.2d 801, 808 (App.1997) ("[W]e presume that the legislature does not enact superfluous or reiterative legislation.").

¶ 15 When viewed as a whole, § 33–1551, including its definition of "recreational user," is neither ambiguous nor inconclusive. Construing the statute narrowly and strictly, as we must, *Ward; Smith; Prince,* we cannot isolate the phrase in § 33–1551(C)(4) that lists specific activities and give it meaning, as the City urges, only in connection with a public landowner's express or implied permission for public entry into a park or other statutorily defined "premises." Rather, the listed activities immediately follow and thus also qualify the phrase "to travel across or to enter upon premises." *See Prince,* 185 Ariz. at 45, 912 P.2d at 49 ("phrase is immediately followed by the uninterrupted list of recreational activities, which modifies the phrase and must be considered in determining its meaning"). The listed activities reasonably relate not only to the landowner's permission but also to the entrant's purpose and conduct on the public property. To limit and relate the statute's specified activities only to the landowner's permission would render the list of activities superfluous, a result we must seek to avoid. *Walker.*

¶ 16 As the Hermans point out, the City's interpretation of § 33–1551 "broadens the statute to cover virtually *any* injury to *any* person occurring in a park," thereby immunizing the City from liability for simple negligence based solely on the City's almost unlimited permission for public access and entry to its parks and regardless of the entrant's purpose, intent, and activities on the property. In our view, such an interpretation not only directly conflicts with our obligation to narrowly and strictly construe the statute, but also eviscerates its recreational user provision.

¶ 17 It is certainly true, as the City argues, that the legislature could have extended qualified immunity only "when a person is engaged in a recreational pursuit on premises open for such purposes" and that it did not expressly do so. But it is equally true that, if the legislature intended to grant qualified immunity to public landowners for injury claims by any non-fee-paying park entrant, regardless of the entrant's purpose, intent, and activity, it could have so stated and eliminated the list of specific activities.

¶ 18 Moreover, even if § 33–1551 were ambiguous, we find no reasonable basis for accepting the City's interpretation of it. "The legislative history of Arizona's recreational use statute indicates that the act 'was designed to encourage landowners to open certain lands to recreational users by limiting liability for injuries to those users.'" *Smith,* 195 Ariz. 214, 986 P.2d 247, ¶ 10, *quoting Bledsoe v. Goodfarb,* 170 Ariz. 256, 259, 823 P.2d 1264, 1267 (1991). The model act pro-

posed by the Council of State Governments in 1965, upon which § 33–1551 apparently is based, had a stated purpose " 'to encourage owners of land to make land and water areas available to the public for *recreational purposes* by limiting their liability toward persons *entering thereon for such purposes.*' " *Ward,* 181 Ariz. at 362, 890 P.2d at 1147, *quoting* Suggested State Legislation on Public Recreation on Private Lands § 1, in 24 Council of State Governments, *Suggested State Legislation* 150, 150 (1965) (emphasis added). *See also Smith,* 195 Ariz. 214, 986 P.2d 247, ¶ 11. In view of the emphasized language quoted above, we cannot say the legislature clearly intended to render irrelevant the entrant's "purposes" for coming onto the land, even though the legislature obviously intended the statute to limit public landowners' liability to recreational users.

¶ 19 The City has not limited its permission for entrance to or use of Reid Park to those activities specified in § 33–1551(C)(4). Indeed, in this case, the City at least implicitly, if not expressly, invited and permitted the public, including Michelle, to come to the park for Jamaicafest. We agree with the Hermans that "Jamaicafest itself was not a 'recreational use' of the park" and that Michelle, who admittedly had entered the park solely to work at that civic event, was not a recreational user. The presence of Jamaicafest and Michelle at Reid Park on the accident date clearly was not "to hunt, fish, trap, camp, hike, ride, exercise, [or] swim." And, we cannot say, nor does the City seriously contend, that either fell within the "similar pursuits," general catch-all phrase in § 33–1551(C)(4).[1] Analogous cases from other jurisdictions support that conclusion. *See Drake v. Mitchell Community Schools,* 649 N.E.2d 1027 (Ind.1995); *Villanova v. American Fed'n of Musicians, Local 16,* 123 N.J.Super. 57, 301 A.2d 467 (1973); *Matthews v. Elk Pioneer Days,* 64 Wash.

App. 433, 824 P.2d 541 (1992); *cf. Light v. Ohio University,* 28 Ohio St.3d 66, 502 N.E.2d 611, 613 (1986).

¶ 20 *Rodriguez v. Schlittenhart,* 161 Ariz. 609, 780 P.2d 442 (App.1989), upon which the City relies, does not support a finding of recreational user status in this case. In *Rodriguez,* this court concluded that the trial court had properly instructed the jury "regarding the duty of care owed to a recreational user" because the evidence supported the instruction and because an issue existed as to whether the landowner had expressly or implicitly permitted public entry onto the premises. *Id.* at 615, 780 P.2d at 448. Moreover, the evidence in that case showed that people frequently swam at the premises, an activity specifically listed in § 33–1551(C)(4).

¶ 21 In sum, we hold that one is not a "recreational user" if he or she does not enter or use the park for any of the activities specified in § 33–1551(C)(4) or for any similar type of recreational pursuit reasonably covered by the statute. We find analogous support for our holding in *Smith.* In that case, Division One of this court held that the recreational use statute did not immunize a university from liability for alleged negligence relating to a carnival-type jumping apparatus temporarily placed on the university's property. Unlike this case, the plaintiff in *Smith* "was not injured by a condition of the land but rather on an apparatus temporarily brought onto the land by the landowner." *Smith,* 195 Ariz. 214, 986 P.2d 247, ¶ 22. Despite that distinction, the court in *Smith* concluded that the plaintiff "was not a recreational user under the statute because at the time he was injured he was not engaged in the type of recreational activity contemplated by the statute." *Id.* at ¶ 21. In reaching that conclusion, the court evaluated the plaintiff's activity at the time of the

---

1. Because the statute does not clearly indicate otherwise, we construe the "similar pursuits" phrase as embracing only such like kind or class as those designated by the preceding specific words and such other activities as may fairly be characterized as recreational pursuits within the context and meaning of the statute as a whole. *Wilderness World, Inc. v. Dep't of Revenue,* 182 Ariz. 196, 199, 895 P.2d 108, 111 (1995) (under

doctrine of ejusdem generis, general words following enumeration of particular classes of persons or things should be construed as applicable only to persons or things of same general nature or class as those enumerated); *cf. Dickey v. City of Flagstaff,* 4 P.3d 965, 296 Ariz. Adv. Rep. 30 (App.1999) (implicitly concluding that sledding in city park fell within § 33–1551).

accident in light of the specific activities listed in § 33–1551(C)(4). That analysis makes sense only if a claimant's recreational user status depends on whether his or her purpose or conduct comes within the activities either specifically listed in the statute or fairly encompassed by it, contrary to the City's position here.

¶ 22 Our holding also is consistent with other courts' decisions. Because most, if not all, states have similar recreational use immunity statutes, courts across the country have wrestled with their scope and application, including issues relating to "recreational user" status. *See generally Robin Cheryl Miller, Annotation, Effect of Statute Limiting Landowner's Liability for Personal Injury to Recreational User,* 47 A.L.R.4th 262 (1986). Contrary to the City's position, courts addressing such issues routinely have focused on the entrant's activities, not just on the nature and scope of the landowner's permission, in determining whether the entrant is a recreational user within the meaning of the immunity statute. *See, e.g., Wringer v. United States,* 790 F.Supp. 210, 213 (D.Ariz. 1992), *aff'd,* 10 F.3d 809 (9th Cir.1993) (applying Arizona law, court ruled decedent's acts of walking around dock area and onto ice "easily f[e]ll within the plain meaning of 'recreational pursuits,'" and "Court would not be stretching the definition of 'hiking' to include walking out onto the ice"); *Casas v. United States,* 19 F.Supp.2d 1104, 1107 (C.D.Cal.1998) (California statute "applies when the person using the land has a recreational purpose"); *Lane v. Titchenel,* 204 Ill.App.3d 1049, 150 Ill.Dec. 391, 562 N.E.2d 1194 (1990) (immunity applied to plaintiff on land for recreational purpose, namely hayride and wiener roast); *Monteville v. Terrebonne Parish Consolidated Gov't,* 567 So.2d 1097, 1106 (La.1990) (summary judgment for government reversed, in part, because it failed to show that "plaintiff entered or used the premises for a recreational purpose"); *Powderly v. Colgate University,* 248 A.D.2d 365, 669 N.Y.S.2d 640, 641 (1998) ("In order for the statute to apply, the injured party must have been engaged in a listed recreational activity...."). *But see Miller v. City of Dayton,* 42 Ohio St.3d 113, 537 N.E.2d 1294 (1989). The City has not cited, and,

other than *Miller,* we have not found, any cases holding that an entrant's actual activities on the premises and his or her reason for being there are irrelevant factors in determining whether the recreational use statute applies.

■ ¶ 23 The City expresses concern about losing statutory immunity based on an individual claimant's "subjective intent" and allegations that he or she "was not on the land 'to have fun' but for some other purpose." Even assuming such concerns legitimately may arise in some circumstances, they are not present here; it is undisputed that Michelle was at Reid Park solely to work and pursuant to the City's permission for the public to attend Jamaicafest. As we have held, the uncontroverted evidence, without reference to subjective factors, supports but one conclusion: Jamaicafest was not a recreational use, and Michelle was not a recreational user within the meaning of § 33–1551. We do not address other hypothetical scenarios not presented here, other than to note that the entrant's subjective intent should not be a controlling factor in determining whether he or she is a recreational user. *See Linville v. City of Janesville,* 184 Wis.2d 705, 516 N.W.2d 427, 431 (1994) (court should "give primary consideration to the nature and purpose of the activity without being controlled by the property user's subjective intent").

¶ 24 In view of our disposition, we also do not address the Hermans' other statutory arguments or their constitutional challenge to § 33–1551. The trial court's summary judgment in favor of the City is vacated, the case is remanded for further proceedings, and the trial court is directed to grant the Hermans' motion for partial summary judgment, which challenged the City's qualified immunity defense. *See Bothell v. Two Point Acres, Inc.,* 192 Ariz. 313, ¶¶ 7, 24, 965 P.2d 47, ¶¶ 7, 24 (App.1998).

CONCURRING: WILLIAM E. DRUKE, Judge, and M. JAN FLÓREZ, Judge.